## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 11-80051-CIV-HURLEY/HOPKINS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE FARM
FIRE & CASUALTY COMPANY,

     Plaintiffs,

Vs.

JEFFERY KUGLER, M.D. *et al.*,

     Defendants.

_____/

### DEFENDANTS JONATHON CUTLER AND 2047 PALM BEACH LAKES PARTNERS, LLC's MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

State Farm has sued twelve (12) Defendants in a putative RICO and fraud-based action centered around allegations that the Defendants entered into a scheme to defraud State Farm and other insurers through the submission of personal injury settlement demand packages which State Farm alleges fraudulently contained claims for medically unnecessary diagnostic and surgical procedures performed on individuals who had been in automobile accidents. The Amended Complaint ("AC") pleads six causes of action: (1) Declaratory Relief pursuant to 18 U.S.C. § 2201 (Count I); (2) RICO violation pursuant to 18 U.S.C. § 1962(c) (Count II); (3) RICO conspiracy pursuant to 18 U.S.C. § 1962(d) (Count III); (4) common law fraud (Count IV); (5) violation of the Florida Deceptive and Unfair Trade Practices Act (Count V); and (6) unjust enrichment (Count VI).

Among the Defendants is Jonathon Cutler, D.P.M. ("Dr. Cutler"), a podiatrist and partial owner of 2047 Palm Beach Lakes Partners, LLC (a/k/a/ Palm Beach Lakes Surgical Center) (the "Surgery Center"), a corporate co-Defendant in this matter where the allegedly "medically unnecessary" procedures were performed and from which allegedly "fraudulent" billings were originated.  Based on the few substantive allegations in the AC specifically regarding Dr. Cutler, it appears that this partial ownership interest in the Surgery Center and his ownership of DiscoCare (a corporate entity not named as a defendant in the action) is the primary reason for his inclusion in this lawsuit.

As explained more fully *infra*, Plaintiffs' scant and conclusory allegations regarding Dr. Cutler are wholly inadequate and fail to plausibly give rise to any of the five causes of action plead against him as a matter of law.[1]  Similarly, Plaintiffs' formulaic and conclusory allegations against 2047 Palm Beach Lakes Partners, LLC, a/k/a Palm Beach Lakes Surgery Center (the "Surgery Center") are likewise insufficient as a matter of law to plausibly support any of the six causes of action pled against it.  Thus, Dr. Cutler and the Surgery Center move to dismiss the AC pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), for failure to state a plausible claim for relief and for failure to plead their claims with sufficient particularity.

Importantly, this Motion to Dismiss is being filed contemporaneously with companion motions to dismiss and memoranda of law being filed by the co-Defendants, and in the interest of judicial economy, the arguments raised therein are hereby adopted and incorporated by reference herein.  This Motion to Dismiss focuses specifically on the paucity and insufficiency of the allegations regarding Dr. Cutler and the Surgery Center and endeavors to avoid unnecessary

---

[1]     Plaintiff filed its original complaint (DE 1), on January 18, 2011.  Plaintiff thereafter filed an Amended Complaint (DE 19) (the "AC") on February 22, 2011.  The allegations related to Dr. Cutler and the Surgery Center, however, remained the same

duplication of argument by way of adopting the arguments raised in the other motions, which are also pertinent to these Defendants.

### I.      Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). While detailed factual allegations are not required, a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Id.* "Conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Am. Dental Ass'n v CIGNA Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010); *Jackson v Bellsouth Tel.*, 372 F.3d 1250, 1262 (11th Cir. 2004). These types of allegations are not to be considered when the court is determining whether the factual allegations of the complaint are enough to state a plausible claim. *Iqbal*, 129 S. Ct at 1950. A plaintiff's actions must be "well pled," and the well pled allegations must nudge the claim from "conceivable to plausible." *See id.*

Thus, in considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely opinions or conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d at 1290 (quoting *Iqbal*, 129 S.Ct. at 1950). Further, "courts may infer from the factual allegations in the complaint 'obvious

alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S.Ct. 1951-52).

Critically here, in the context of fraud claims, bald allegations that a communication was made "knowingly or fraudulently" or was "false" are not entitled to an assumption of truth under *Iqbal*, nor are bald allegations of conspiracy. *Sinaltrainal et al. v. Coca Cola*, 578 F.3d 1252 (11th Cir. 2009); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d at 1293 (11th Cir. 2010). Moreover, when a party makes allegations of fraud, "the circumstances constituting the fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). In the Eleventh Circuit, it is established that a RICO claim must comply not only with the *Twombly* and *Iqbal* standards, but also with Rule 9(b)'s heightened pleading requirements for fraud claims.[2] *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010); *see also Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.").

The purpose of Rule 9(b) is to alert defendants to the precise misconduct with which they are accused and to protect defendants from contrived charges of fraudulent behavior. *Brooks v. Blue Cross & Blue Shield of Fla.*, *Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Const. Co.*, 482 F.3d at 1316-17. RICO claims will be dismissed if a complaint "lump[s] together all of the defendants in their allegations of fraud." *Id.* at 1317. Critically, "In a case involving multiple defendants . . . the

---

[2]    Because Plaintiff's section 1962(c) claim is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal*, but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard.

complaint should inform **each defendant** of the nature of his alleged participation in the fraud." *Id.* at 1317 (emphasis added) (citing *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1381 (11th Cir. 1997)).

As explained more fully *infra*, the Plaintiffs' AC is replete with conclusory and formulaic allegations, is insufficiently particularized, and plainly fails to meet the above criteria and must be dismissed.[3]

## II.     The Few Allegations Against Dr. Cutler and the Surgery Center

Although quite lengthy, the AC makes relatively few allegations specifically regarding Dr. Cutler and/or the Surgery Center, and those that it does make are typically either: 1) opinions or conclusions; or 2) improperly-pled (and sometimes conclusory) facts, both of which must be ignored by the Court.   The remaining, innocuous allegations are inadequate under the *Twombly/Iqbal* analysis to plausibly support any of Plaintiffs' purported causes of action. Moreover, the Plaintiffs' allegations patently fail to satisfy the rigors imposed by Rule 9(b)'s heightened pleading standard and instead offer no specificity or particularity whatsoever.

## III.     Plaintiffs' Fraud Claims Fail To Meet Basic Pleading Standards

The Plaintiffs' fraud-based RICO claims (Counts II and III), common law fraud claim (Count IV), and FDUPTA claim (Count V) against Dr. Cutler and the Surgery Center must be dismissed for failure to satisfy the requirements of *Twombly*, *Iqbal* and Rule 9(b).

### A. Plaintiffs' allegations re: Dr. Cutler and the Surgery Center are improperly conclusory and formulaic

As an initial matter, conclusory allegations that communications were made, for example, "fraudulently" or "knowingly" are not entitled to the assumption of truth under *Iqbal*.  Instead, the Supreme Court has taught us to apply a "two-pronged approach": 1) eliminate allegations

---

[3]      On February 17, 2011, the Plaintiffs filed a Civil RICO Case Statement (DE 17).  The RICO Case Statement neither supplies missing facts satisfying the elements of RICO, nor adds the degree of particularity required by *Twombly* and Rule 9(b).

that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *See Iqbal*, at 1950.

The relatively few allegations in the AC regarding Dr. Cutler and the Surgery Center routinely and baldly assert mere legal conclusions and/or improperly plead factual allegations that should be eliminated from the Court's analysis of the sufficiency of the AC. For example, it is alleged that, "[D]octor Jonathan Cutler, [is] a podiatrist, who knowingly profits from the charges for the medically unnecessary discograms and PDs through his partial ownership interest in the Palm Beach Lakes Surgery Center." AC, at ¶2(g). Eliminating the improper legal conclusions and improperly-plead factual conclusions from that statement, the Court is left with the allegation that, "[D]octor Jonathan Cutler, [is] a podiatrist, who [] profits from the charges for the [] discograms and PDs through his partial ownership interest in the Palm Beach Lakes Surgery Center." This uninteresting allegation is plainly inadequate to plausibly support a claim for relief under any of Plaintiffs' asserted causes of action. Similarly, the AC alleges in conclusory fashion that the Surgery Center "[i]s used to knowingly submit fraudulent charges for the facility fees relating to the medically unnecessary discograms and PDs." AC, at ¶ 2(d). Applying the *Iqbal* strainer to this allegation leaves the Court with the basic allegation that the Surgery Center "[i]s used to . . . submit . . . charges for the facility fees relating to the . . . discograms and PDs."

Arguably the two most "incendiary" allegations against Dr. Cutler state that, "Dr. Cutler has submitted fraudulent charges for the Spine Wand used to perform the medically unnecessary PDs to State Farm and other insurers through Discocare . . ." (AC, at ¶24), and similarly that, "Dr. Cutler knowingly profits from the medically unnecessary PDs through his ownership interest in the Palm Beach Lakes Surgery Center and by submitting fraudulent bills for the Spine

Wands used to perform the medically unnecessary PDs . . ." *Id.*, at ¶ 144. After applying *Iqbal* and eliminating the improper conclusions – including that the submitted charges were "fraudulent," that Dr. Cutler acted "knowingly," and that the procedures at issue were "medically unnecessary" – the Court is left with the mundane allegation that "Dr. Cutler has submitted [] charges for the Spine Wand used to perform the [] PDs to State Farm and other insurers through Discocare. . . and has [received] profits through his ownership interest in the Palm Beach Lakes Surgical Center." This statement represents the sum and substance of the most critical allegations regarding Dr. Cutler, and as such is plainly inadequate to plausibly state a claim for relief under any of the Plaintiffs' stated causes of action.

Similarly, the most facially damning allegation against the Surgery Center is that, "In every claim at issue, the Palm Beach Lakes Surgery Center submitted fraudulent charges and related documentation for the facility fees relating to the medically unnecessary discograms and PDs at issue." AC, at ¶16; see also ¶ 144 ("the Palm Beach Lakes Surgery Center knowingly submits fraudulent charges and related documentation for the facility fees relating to the medically unnecessary discograms and PDs"). After siphoning off the improper conclusory labels, the remaining allegation is that the "[S]urgery Center . . . submits charges and related documentation for the facility fees relating to the . . . discograms and PDs at issue."

To more thoroughly illustrate this point and the value of the exercise, the following bullet points show the universe of the allegations regarding Dr. Cutler in the AC (***conclusory allegations in italics, which must be ignored***). One should read these allegations while simultaneously omitting/ignoring the improper conclusions:

- ¶ 2(g). [D]octor Jonathan Cutler, [is] a podiatrist, who *knowingly* profits from the charges for the *medically unnecessary* discograms and PDs through his partial ownership interest in the Palm Beach Lakes Surgery Center, and his former ownership of non-party Discocare Inc. ("Discocare"), which is described below.;

7

- ¶20.   Jonathan Cutler is a citizen of Florida and resides in West Palm Beach, Florida. Dr. Cutler is licensed to practice podiatry in Florida, is a member of the defendant 2047 Palm Beach Lakes Partners, LLC, and was the sole shareholder of Discocare from its formation in December 2005 through December 31, 2007 when Arthrocare purchased Discocare from him for $25 million.;

- ¶27. . . .  (i) Dr. Cutler has submitted *fraudulent* charges for the Spine Wand used to perform the medically unnecessary PDs to State Farm and other insurers through Discocare . . . ;

- ¶ 91.   In early 2004, Carroll and Drs. Gomez, Kugler, Cutler and Rogers, as well as others, formed the Palm Beach Lakes Surgery Center. . . .;

- ¶ 95.   As owners and/or operators of the Palm Beach Lakes Surgery Center, Carroll and Drs. Kugler, Gomez, Cutler and Bistline have profited *directly and substantially* from the *fraudulent* facility fees relating to the *medically unnecessary* discograms and PDs performed there.;

- ¶ 99.  . . . (i) Iscoe traveled out of state with Izydore, Dr. Cutler and others to recruit doctors to perform PDs with the Spine Wand . . . .;

- ¶ 105.  . . . The most important of such steps included Dr. Cutler's formation of Discocare, *and a full fledged partnership with the other defendants in this case* to market and promote the Spine Wand to personal injury attorneys, doctors and surgery centers across the country.;

- ¶ 107.   In approximately 2005, Arthrocare joined forces with Dr. Cutler *and the other defendants* to launch a joint marketing scheme designed to rapidly increase the sales and use of Spine Wands to perform PDs on patients with personal injury claims. . . .;

- ¶ 108.  . . . In particular, on December 23, 2005, Dr. Cutler formed Discocare and Arthrocare placed Michael Denker, an Arthrocare Spine Wand sales manager, at the helm of Discocare as its "director."

- ¶ 110.  . . . For example, Izydore, along with Drs. Cutler, Bistline and Kugler, and Iscoe, would participate in the marketing efforts by meeting, speaking with and training doctors to perform PDs with the Spine Wand. . . .;

- ¶ 116.  The same document explains how Discocare and Arthrocare launched their joint activities with the co-defendants in this case.  In that regard, the document states:

  If they ask why, I tell them "It started with one of my accounts in Palm Beach *[no doubt referring to Kugler, Gomez, Bistline, Cutler, Carroll, Izydore and the Palm Beach Lakes Surgery Center].* They were doing a lot of personal injury business. They started with a few cases a month, which is fine, but then they got busy, suddenly they were doing 25 [PDs] a month, and owed Arthrocare a lot of money, and hadn't settled any cases yet. The physician owners (who weren't doing the [PDs]) in the Surgery Center were about to cut off the surgeon from doing the [PDs] because they were going to go bankrupt. We found a distributor [Discocare

and Dr. Cutler] who has deep pockets, and was able to carry the cost of the [Spine Wand], so now we can bring the wand in at no charge to the facility, and the distributor waits for the money. . . .;

- ¶ 126. . . . As a result, *to eliminate questions about the independence of Arthrocare and Discocare, on December 31, 2007,* Arthrocare *purported to* purchase Discocare from Cutler for $25 million in cash.;

- ¶ 127. On February 19, 2008, Cutler *knowingly* testified *falsely* in a deposition about the relationship between Discocare and Arthrocare. Specifically, among other things, he testified *falsely* that: (a) the reason Arthrocare bought Discocare for $25 million was because Arthrocare "wanted to buy it," *when in fact Cutler knew Arthrocare bought Discocare to thwart investigations of their relationship by insurers, investors and analyst*; (b) Arthrocare charged Discocare $7,454 for Spine Wands, *when in fact Cutler knew that there was no expectation that Discocare would pay Arthrocare that amount for Spine Wands*; (c) Discocare never employed a sales representative, *when in fact Cutler knew that PI Attorney Iscoe's brother, Matthew Iscoe, had been a sales representative for Discocare*; and (d) Discocare did not market the Spine Wand and PDs to law firms, *when in fact Cutler knew that Discocare specifically targeted personal injury law firms in its marketing efforts.*; and

- ¶ 144. . . . (e) Dr. Cutler *knowingly* profits from the *medically unnecessary* PDs through his ownership interest in the Palm Beach Lakes Surgery Center and by submitting *fraudulent* bills for the Spine Wands used to perform the *medically unnecessary* PDs . . .

*See* AC. As is evident from the above allegations, a judicious and dispassionate application of the scrubber required by *Twombly*, *Iqbal*, and *Sinatrainal*, reveals that they are devoid of any factual allegations that, taken as true, would make any of the alleged claims against Dr. Cutler (and/or the Surgery Center) even remotely plausible. Instead, a proper reading of these allegations reveals that they describe lawful medical, commercial, and marketing activities. Thus, the claims against Dr. Cutler and the Surgery Center should be dismissed with prejudice.

### B.  Plaintiffs' fraud claims do not satisfy Rule 9(b)

Even assuming *arguendo* that the allegations in Plaintiffs' fraud-based claims against Dr. Cutler and the Surgery Center could be accepted as true under *Iqbal*, these limited allegations clearly fail to meet the heightened pleadings requirements of Rule 9(b). As noted *supra*, to satisfy the Rule 9(b) standard, complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3)

the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1381 (11th Cir. 1997); *see also Ambrosia Coal & Const. Co.,* 482 F.3d at 1316-17.  Critically, "In a case involving multiple defendants . . . the complaint should inform **each defendant** of the nature of his alleged participation in the fraud."  *Id.* at 1317 (emphasis added).

With that high standard in mind, suffice it to say that Plaintiffs have completely and utterly failed to meet of the requirements of Rule 9(b) with respect to their fraud-related allegations as to both Dr. Cutler and the Surgery Center.  Instead, Plaintiffs boldly and bluntly accuse Dr. Cutler and the Surgery Center of submitting "fraudulent billing," (*see* AC, at ¶¶ 16, 27, 144), but totally fail to specify or even identify: (1) any of the (much less the precise) "fraudulent" billing, statements, documents, or misrepresentations; (2) the time and place when Dr. Cutler and/or the Surgery Center allegedly submitted the false billing; (3) meaning information regarding Dr. Cutler's alleged role in the fraud (other than as an owner of a company) (4) the content of the allegedly false billing and/or the manner in which the billing misled the Plaintiffs; and (5) what Dr. Cutler and/or the Surgery Center "gained" from the alleged fraud (other than the amorphous suggestion that Dr. Cutler recognizes "profits" from his "partial ownership" in the Surgery Center).  The Plaintiffs literally offer nothing particular on any of these fundamental issues, and this is wholly inadequate as a matter of law.

In fact, although outside the scope of this motion, it is worth noting that nowhere in the AC do the Plaintiffs identify "the precise statements, documents, or misrepresentations" made by *any* specific defendant.[4]  Instead, for example, Plaintiffs lamely point to 198 "Rico Events" alleged to have been sent in furtherance of the "fraudulent" scheme," and offer few, if any, of the required specifics   *See*, *e.g.*, AC, at ¶¶ 146, 151 (citing Exhibit A to the AC).  The only alleged

---

[4]     Thus, to the extent Plaintiff is relying on alleged fraudulent misstatements made by other Defendants to support any of its claims, Plaintiff has still failed to satisfy, *inter alia*, Rule 9(b).

misrepresentations set forth in these "claims," (which are actually settlement demand packages, and not claims) however, are that the "discograms and PD's were medically necessary" and that "certain PD's were correctly billed under CPT Codes 63056 and 63057." *Id.* Plaintiffs fail, however, to identify with adequate specificity what the alleged false statements consisted of, which Defendants (if any) made them, to whom they were sent, and whether and in what respect Plaintiff's relied upon the allegedly false information. More specifically, although Plaintiffs attached sample demand letters from a patient's lawyer (*See* Exhibit I to the AC), Plaintiffs conveniently ignore, *inter alia*, that the letters were sent by independent, third-party attorneys. Critically, Plaintiffs also fail to explain how these letters actually misled them. Ultimately, these are fatal omissions to each of Plaintiffs' fraud-related claims, and they must be dismissed.[5]

### IV.     Plaintiffs' RICO Claims are Deficient

#### A. Plaintiffs fails to plausibly allege that Dr. Cutler and/or the Surgery Center conducted the alleged RICO enterprise

18 U.S.C. Section 1962(c) explicitly requires that a defendant "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." *See id.* The Supreme Court has interpreted this language to mean that a defendant must "operate or manage" the enterprise. *Reeves v. Ernst & Young*, 507 U.S. 170, 183 (1993). More specifically, the Supreme Court has explained that:

> In order to "participate, directly or indirectly, in the conduct of such enterprises's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary

---

[5]     Because Plaintiffs' claims for declaratory relief (Count I) and unjust enrichment (Count VI) are rooted in allegations of fraud, they too are subject to the *Twombly* and *Iqbal* pleading standards, as well as Rule 9(b), and fail for the same reasons stated *supra*. *Anthony Distribs. v. Miller Brewing Co.*, 904 F. Supp. 1363, 1365-66 (M.D. Fla. 1995)(as to declaratory judgment actions). *United States v. Gericare Med. Supply, Inc.*, 2000 U.S. Dist. LEXIS 19661, at * 29 (S.D. Ala. Dec. 11, 2000) (citations omitted)(as to unjust enrichment actions).

> responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some degree in directing the enterprise's affairs is required. The 'operation or management' test expresses this requirement in a formulation that is easy to apply.

*Id.* at 179; *see also Kelly v. Palmer, Reifler & Assocs.*, *P.A.*, 681 F. Supp. 2d 1356, 1380 (S.D. Fla. 2009) (noting the standard and concluding that, "We similarly conclude that the Palmer Law Firm did not participate in the operation or management of the [RICO] enterprise in our case."). "Thus, the critical inquiry in determining whether a RICO-defendant was involved in the operation or management of the enterprise is whether the defendant "conducted or participated in the conduct of the enterprise's affairs, not just [his or her] *own* affairs." *Coquina Invs. v. Rothstein*, 2011 U.S. Dist. LEXIS 7062, at *10-11 (S.D. Fla. January 20, 2011) (internal citations and quotations omitted) (emphasis in original). This includes factual allegations "as to *how* [each] individual Defendant[] played a part in directing the affairs of the enterprise." *Comcast of South Florida, II, Inc. v. Best Cable Supply, Inc.*, No. 07-22335-CIV, 2008 WL 1900584, at *8 (S.D. Fla. Jan. 22, 2008) (emphasis in original). Thus, Plaintiffs must allege detailed facts which demonstrate "affirmative and deliberate participation" by *each* defendant in "the conduct of the affairs of the enterprise" by "'knowingly implement[ing]' and 'mak[ing] decisions'" regarding the alleged pattern of racketeering activity. *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1328 (S.D. Fla. 2008) (dismissing RICO claims against a bank, under *Twombly*); *Official Committee of Unsecured Creditors of PSA*, *Inc. v. Edwards*, 437 F.3d 1145, 1156 (11th Cir. 2006).

In other words, RICO requires State Farm to plead facts demonstrating that Dr. Cutler played some part in directing the affairs of the enterprise, not just his own affairs, and exercised an element of control over those affairs. The same holds true for the Surgery Center. State Farm, however, has failed to allege *any* fact, specific or otherwise, suggesting that Dr. Cutler

and/or the Surgery Center had a part in directing the affairs of the alleged enterprise.  Instead, Plaintiffs formulaically recite (yet again) that, "Each defendant has knowingly conducted and/or participated, directly or indirectly, in the conduct of the Fraudulent PD Enterprise's affairs through a pattern of racketeering activity . . ." AC, at ¶ 146.  This is woefully insufficient. Similarly, in their RICO Case Statement (DE 17), Plaintiffs inadequately and in conclusory fashion suggest that, "Dr. Cutler has directly and/or indirectly participated in the operation or management of the enterprise and directed its affairs in his roles as a member of the Palm Beach Lakes Surgery Center and the sole shareholder of Discocare . . ." *Id.* at 26.  Dr. Cutler's mere ownership interest in the Surgery Center, however, is an inadequate fact with which to drag either he or the Surgery Center into the RICO fold.

In short, Plaintiffs completely fail to allege a single fact that would permit a plausible inference that either Dr. Cutler or the Surgery Center had a role in directing, operating or managing the alleged enterprise's affairs sufficient to support a RICO claim.  Accordingly, because Plaintiffs fail to meet this threshold element, the RICO claims must be dismissed.

### B.  Plaintiffs fail to allege facts of fraudulent intent

Plaintiffs' RICO claim is predicated on alleged acts of mail fraud.  As the Court is well-aware, an essential element of a mail fraud violation is a scheme to defraud which requires specific intent to defraud and the use of false or fraudulent representation or statements of fact. *Mills v. Polar Molecular Corp.*, 12 F. 3d 1170, 1176 (2d Cir. 1993); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 161 (D. Conn. 2000); *Asheka Indus. v. Travelers Indem. Co.*, 831 F. Supp. 74, 89 (E.D.N.Y. 1993).  Nevertheless, Plaintiffs do not allege any facts that would permit a plausible inference that Dr. Cutler and/or the Surgery Center had a fraudulent intent or knew of the alleged wrongdoing by the co-Defendants.  Having pled no such factual basis to support a plausible

inference of fraudulent intent or knowledge, Plaintiffs' allegations fail to support a RICO claim against both Dr. Cutler and the Surgery Center.

### C.  Plaintiffs fail to properly plead a RICO enterprise

Plaintiffs' allegations of a RICO enterprise also fail as a matter of law.  AC, ¶¶ 140-41; *see also* Plaintiffs' RICO Statement (DE 17), pp. 2, 19-22.  Under RICO, an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (1981).  A RICO enterprise is an entity "associated together for a common purpose of engaging in a course of conduct." *Id.*; *see also Boyle v. U.S.*, 129 S.Ct. 2237, 2244, 173 L. Ed. 2d 1265 (2009) (reiterating that definition).

"The parties must be 'organized in a fashion that would enable them to function as a racketeering organization for other purposes.'"  *Millette v. DEK Technologies, Inc.*, No. 08-60639-CV, 2008 WL 5054741, at *4, (S.D. Fla. 2008);  *see also Opteum Fin. Servs., LLC v. Kolbe*, 2010 U.S. Dist. LEXIS 100813 (M.D. Fla. 2010) (same) (citing *Lockheed Martin Corp. v. Boeing Co.*, 314 F.Supp.2d 1198, 1209 (M.D. Fla. 2004)).  A "RICO enterprise cannot be a group simply conspiring to commit a fraud." *Id.* (citing *In re Managed Care Litig., Inc.*, 298 F. Supp. 2d 1259, 1274 (S.D. Fla. 2003)); *see also Jay E. Hayden Foundation v. First Nrighbor Bank, N.A.* 2010 WL 2485678, at *6 (7th Cir. 2010) (dismissing RICO claim where the plaintiff alleged "just a conspiracy . . . .").

More recently, the Supreme Court has clarified that the "association-in-fact" RICO enterprise, the type of enterprise alleged here by the Plaintiffs, must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity

sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 129 S.Ct. 2237, 2244, 173 L. Ed. 2d 1265 (2009).  In *Boyle*, the Supreme Court also explained that while the association-in-fact enterprise need not have a "hierarchical structure" or "chain of command," there must be a showing of an enterprise structure distinct from the underlying pattern of racketeering activity.  *Id.* at 2245. "For example, suppose that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . . Proof of these patterns would not be enough to show that the individuals were members of an enterprise." *Id.* at 2245, n.4.  Thus, the existence of the enterprise is an element distinct from the pattern of racketeering activity and "proof of one does not necessarily establish the other." *Boyle*, 129 S. Ct. at 2245.

In the AC, Plaintiffs merely and inadequately parrot conclusory allegations regarding the three-part formulaic definition of an "association-in-fact" enterprise under *Boyle* and fails to make the necessary factual allegations regarding the existence of a distinct "enterprise."  More specifically, Plaintiffs allege:

> All defendants formed an association-in-fact "enterprise" ("the Fraudulent PD Enterprise") as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce. The members of the Fraudulent DP Enterprise are and have been joined in a common purpose, have relationships with and among each other, and have associated through time sufficient to permit those associated to pursue the enterprise's purpose.

AC at ¶¶ 140-41.  Thus, Plaintiffs' assertion that a RICO association-in-fact exists is little more than a mere conclusion and a "formulaic recitation of the elements" of a RICO enterprise.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citation omitted).  Similarly, with respect to the commonality of purpose prong of the *Boyle* test, the Plaintiffs bluntly and in conclusory fashion asserts only that the Defendants acted with the "common purpose of defrauding State Farm and other insurers through fraudulent

personal injury claims." AC, ¶ 141. This is likewise a mere conclusion.[6] Plaintiffs then allege only a string of actions taken by Defendants either severally or in small sub-groups and essentially alleges nothing more than that the alleged acts were committed by the named defendants. *See* AC, ¶¶ 140-41, Civil Rico Case Statement (DE 17), at pp. 19-22. This is similarly insufficient as a matter of law.

Also conspicuously absent from the AC are sufficient allegations of fact from which a plausible inference can be drawn that the alleged "enterprise" operated as a continuing unit apart and distinct from the alleged predicate acts. In other words, there are insufficient factual allegations that sufficiently distinguish the Defendants' participation in the alleged enterprise from the predicate acts themselves (deficient as those allegations are). *See Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997) (considering whether enterprise would still exist where the predicate acts were removed from the equation).[7] The Plaintiffs try to address this issue in their Civil Rico Case Statement (DE 17), which inadequately states in improperly conclusory fashion that, "The pattern of racketeering activity and the enterprise are separate and have not merged into one entity. The enterprise . . . has functioned as a continuing unit over a period of time sufficient to pursue courses of conduct designed to achieve the common goal of defrauding State Farm . . . ." *Id.* at p. 22.[8]

---

[6]     Note that *Twombly* rejected a conclusory allegation of conspiracy contained in a very detailed complaint; similarly, *Iqbal* rejected the formulaic recitation of the elements of a constitutional discrimination claim.

[7]     Admittedly, it is unclear after *Boyle* to what extent the enterprise must be ascertainably distinct from the underlying pattern of racketeering activity. *See* 129 S. Ct. at 2245. What is crystal clear is that that the existence of the enterprise is a separate element that must be specifically, factually, pled and proved. *See id.*

[8]     Plaintiff seems to suggest that because the Defendants also went about their "daily activities" (such as providing medical services to patients) when they were not allegedly committing the RICO predicate acts, this constitutes proof that the "enterprise" continued as a unit. This is plainly inadequate as a matter of law.

An instructive case in this context is *State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F. Supp. 2d 639 (N.D. Tex. 2002), in which the court dismissed similar RICO claims asserted by State Farm against an alleged association-in-fact RICO "enterprise" consisting of law offices and chiropractic clinics (among others).   The gist of State Farm's claim in that case was that the defendants were participants in a conspiracy to present fraudulent insurance claims based on intentionally caused automobile collisions.   In dismissing the RICO claims, the court explained:

> The enterprise alleged in this case as an association-in-fact is comprised of various law offices and chiropractic clinics. The evidence establishes that each of the entities listed had a shared or common purpose of defrauding and obtaining money and property from insurance companies, including State Farm.   State Farm, however, has not shown the existence of an ascertainable structure separate and apart from the alleged pattern of racketeering. In other words, there is no evidence that the association of law offices and chiropractic clinics existed separate and apart from the alleged pattern of racketeering. Aside from the commission of the alleged predicate acts, there appears to be nothing which binds the association together. As such, State Farm has failed to show continuity -- that the Sudden Stop Collision Ring Enterprise existed for any purpose other than to commit the predicate offenses, that is, mail fraud. Accordingly, the court concludes that State Farm's civil RICO claim under § 1962(c) fails as a matter of law.

*Id.* at 650[9]; *see also Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1378-80 (S.D. Fla. 2009) (finding that a law firm acting as an agent for its clients by sending civil theft demand letters was not a separate and independent entity as required for RICO  liability).   State Farm's AC in this case suffers from the precise defect that the complaint did in *Giventer*, and the RICO claims here should likewise be dismissed.[10]

---

[9]      The *Giventer* court noted that State Farm had also asserted a RICO conspiracy claim under § 1962(d), contending that Giventer and Merlin conspired to violate subsection (c). Because State Farm had failed to show the existence of an association-in-fact enterprise, the court found that it could likewise not establish that Giventer and Merlin conspired to violate subsection (c).

[10]      Plaintiff also fails to allege another requirement for establishing a 1962(c) enterprise: "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and 2) an 'enterprise' that is not simply the same 'person' referred to by a

Finally, as *Millette* (Cohn, J.) teaches us, when a complaint "is founded on commercial relationships between the alleged components of the enterprise," as State Farm alleges in this case, the plaintiff must "plead facts dispelling the notion that the different parties entered into the alleged agreement for their own gain or benefit."   2008 WL 5054741, at *4; *see also In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1274 (S.D. Fla. 2003) ("Since 'diverse parties … customarily act for their own gain or benefit in commercial relationships,' a complaint founded on commercial relationships between the alleged components of the enterprise should plead facts "dispel[ling] the notion that the different parties entered into [the alleged] agreements … for their own gain or benefit.") (citing *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673. 677 n.4 (7th Cir. 2000)).

Plaintiffs, however, fail to plead any facts dispelling the plausible and lawful commercial motive for the Defendants' (many of whom are licensed professionals) dealings with one another.   To the contrary, Plaintiffs even (albeit unintentionally) acknowledge the commercial nature of many of these relationships and note the "financial motives" (¶ 55) of the Defendants. For example, Plaintiffs allege that the "success of the defendants' [alleged] scheme depends" on: (1) *quid pro quo* relationships among themselves (¶ 24); (2) referral relationships with PI attorneys (¶ 25); (3) referral relationships with other health care providers (¶ 26); and (4) a "symbiotic relationship with non-parties Arthrocare and Discocare." (¶ 3)  Plaintiffs, however, fail to allege facts disputing plausible and lawful economic motives for such relationships and ultimately proffer only the bald formulaic mantra that the Defendants sought to "accomplish their common purpose of defrauding State Farm and other insurers through the fraudulent

---

different name."  *Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158, 161 (2001).  Here, the alleged RICO enterprise is a mirror image of the purported RICO "Defendants," and not a separate and distinct entity.  For this reason as well, Plaintiff's claims must fail.

personal injury claims." (¶ 25).   This is likewise insufficient as a matter of law.   In sum, Plaintiffs fail to set forth sufficient allegations that plausibly establish a cognizable RICO enterprise, and their RICO claims should be dismissed.

### D.  Plaintiffs' RICO Conspiracy Claim Fails

With respect to the Plaintiffs' RICO (mail fraud) conspiracy claim (Count III), Plaintiffs formulaically and generically assert, for example, that:

> The defendants *have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly, in the conduct of the Fraudulent PD Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute*. . . to submit *fraudulent* claims to State Farm and other insurance companies based upon *medically unnecessary* discograms and PDs, which are described, in part, in RICO Events 1-198 of Ex. A attached hereto.

AC, at ¶¶ 150,151; *see also* ¶ 152 ("each defendant knew of, agreed to, and acted in furtherance of the overall objective of the conspiracy by facilitating the submission to State Farm and other insurance companies of fraudulent claims based upon medically unnecessary discograms and PDs.").   This is precisely the kind of "formulaic recitation" that does not survive *Iqbal*, much less Rule 9(b), and the Plaintiffs again improperly lump all the defendants together.   Critically absent is any specific allegation that Dr. Cutler and/or the Surgery Center agreed to the overall objective of the conspiracy or agreed to commit two predicate acts.   *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (internal quotations and citations omitted) (noting this requirement).   Moreover, the Plaintiffs have alleged nothing to suggest that any of the defendants, including Dr. Cutler and/or the Surgery Center, acted in any way inconsistent with the independent pursuit of their own economic self-interest.   "Accordingly, Defendants' parallel conduct is equally indicative of rational independent action as it is concerted, illegitimate conduct and thus 'stays in neutral territory.'"   *See Am. Dental Ass'n*, 605 F.3d at 1295 (quoting Twombly, 550 U.S. at 557, 127 S.Ct. at 1966).   Ultimately, this combination of a formulaic

recitation of the elements and a failure to plausibly allege that the Defendants either agreed to the overall objective or to commit two predicate acts are plainly inadequate to sustain a fraudulent conspiracy count.[11]

### IV.     Plaintiffs Fail To State a Plausible Claim for Common Law Fraud

To assert a valid fraud claim for common law fraud, Plaintiffs must allege that Dr. Cutler and/or the Surgery Center: 1) made a false representation of a material fact to Plaintiffs; 2) knew or should have known that the representation was false; 3) made the statement for the purpose of inducing Plaintiffs to act in reliance thereon; 4) the Plaintiffs reasonably and actually relied upon the representation; and 5) damages to Plaintiffs were caused by the representation.  *See Tucci v. Smoothie King Franchises, Inc*, 215 F.Supp.2d 1295, 1302 (M.D. Fla. 2002).  As discussed *supra*, claims for fraud must be dismissed if they are not pled with the requisite specificity that identifies: the specific misrepresentations, when such misrepresentations were made, by whom, to whom and the substance of the statements.  *See Bailey v. Janssen Pharmaceutica*, *Inc.*, No. 06-80702-CIV-RVSKAMP/VITUNAC, 2006 WL 36654117, at *6 (S.D. Fla. Nov. 14, 2006). For all the reasons set forth above, Plaintiffs' non-specific mantra and total absence of specific allegations regarding Dr. Cutler and/or the Surgery Center's allegedly fraudulent billings requires dismissal.

### V.     Plaintiffs Fail to State a Plausible Claim for Unjust Enrichment

To state a claim for unjust enrichment, Plaintiffs must allege that: (1) a benefit was conferred by State Farm on the defendants, who have knowledge thereof; (2) the benefit was accepted and retained the benefit conferred; and (3) the circumstances are such that it would be

---

[11]     In any event, in the Eleventh Circuit, where the primary RICO violation fails to state a claim, the civil RICO conspiracy claim necessarily fails.  Because Count II fails, Count III likewise necessarily fails.  *See Am. Dental Ass'n*, 605 F.3d at 1295, fn.6 (recognizing the controlling precedent in this Circuit to be "where the RICO claim fails and the conspiracy count does not contain additional allegations, the conspiracy count necessarily fails.").

inequitable for the defendants to retain the benefit without paying value thereof to the Plaintiffs. *See David v. American Suzuki Motor Corp.*, 629 F.Supp.2d 1309 (S.D. Fla. 2009).  As previously noted, in addition to satisfying 9(b) when predicated on allegations of fraud, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  There are simply no facts alleged in the AC suggesting that either Dr. Cutler or the Surgery Center have been unjustly enriched by State Farm, and Count VI should be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs fail to allege actionable claims against both Dr. Cutler and the Surgery Center, and their Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

  s/ Robert N. Nicholson
Robert N. Nicholson
Florida Bar No. 933996
Robert@NicholsonLawGroup.com
Parker D. Eastin
Florida Bar No. 48044
Parker@NicholsonLawGroup.com
Nicholson Law Group, P.A.
200 South Andrews Avenue, Suite 100
Fort Lauderdale, Florida 33301
Telephone: (954) 351-7474
Facsimile: (954) 351-7475

## CERTIFICATE OF SERVICE

I hereby certify that on March11, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Robert N. Nicholson

## SERVICE LIST
### State Farm v. Jeffery Kugler, MD et al.
### Case No. 11-80051-Civ-Hurley/Hopkins
### United States District Court
### Southern District of Florida

David Spector, Esq.
david.spector@akerman.com
Akerman Senterfitt
222 Lakeview Drive, Suite 400
West Palm Beach, Florida 33401
(561) 653-5000
(561) 659-6313 (fax)
**Attorney for Plaintiff**
**State Farm Companies**
**Via Electronic Court Filing**

Ross O. Silverman, Esq.
ross.silverman@kattenlaw.com
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Ill 60661-3693
(312) 902-5200
(312) 902-1061 (fax)
**Attorney for Plaintiff**
**State Farm Companies**
**Via U.S. Mail**

Scott W. Atherton, Esq.
scott.atherton@akerman.com
Akerman Senterfitt
222 Lakeview Drive, Suite 400
West Palm Beach, Florida 33401
(561) 653-5000
(561) 659-6313 (fax)
**Attorney for Plaintiff**
**State Farm Companies**
**Via Electronic Court Filing**

Charles Chejfec, Esq.
Charles.chejfec@kattenlaw.com
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Ill 60661-3693
(312) 902-5200
(312) 902-1061 (fax)
**Attorney for Plaintiff**
**State Farm Companies**
**Via U.S. Mail**