UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 11-80051-CIV-HURLEY/HOPKINS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE FARM
FIRE & CASUALTY COMPANY,

       Plaintiffs,

vs.

JEFFERY KUGLER, M.D, JANE BISTLINE, M.D.,
and HELDO GOMEZ, M.D.,

JEFFREY L. KUGLER, M.D., P.A. n/k/a
NATIONAL ORTHOPEDICS AND NEUROSURGERY, P.A.,
JANE E. BISTLINE, M.D., P.A., HELDO GOMEZ, M.D., P.A.,
and NORTH PALM NEUROSURGERY, P.L.,

2047 PALM BEACH LAKES PARTNERS, LLC,
a/k/a Palm Beach Lakes Surgery Center,

GARY CARROLL, MARK IZYDORE, and PALM
BEACH PRACTICE MANAGEMENT, INC., and

JONATHAN CUTLER, M.D.,

       Defendants.

_____/

## DEFENDANTS' KUGLER AND NATIONAL ORTHOPEDICS  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Robert W. Wilkins, Esquire
Florida Bar No. 578721
JONES, FOSTER, JOHNSTON & STUBBS, P.A.
*Attorneys for Defendants Kugler and National Orthopedics*
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
Telephone:  561-650-0400
Facsimile: 561-650-0412
Email:  rwilkins@jones-foster.com

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

I.     INTRODUCTION ................................................................................1

II.    STANDARD OF REVIEW ..................................................................2

      A.  Standard Pursuant to Rule 12(b)(6) .........................................2

      B.  Specificity Requirements Pursuant to Rule 9(b)......................3

III.    LEGAL ARGUMENT

      A.  Plaintiffs' RICO, Common Law Fraud and FDUTPA Claims Must
Be Dismissed For Failure to Satisfy The Requirements of *Iqbal* and 9(b)..............4

          1.  Plaintiffs' RICO, fraud and FDUTPA claims are merely conclusory,
and therefore must be dismissed under *Iqbal* ....................................................4

          2.  Plaintiffs' RICO, fraud and FDUTPA allegations lack the allegations
of date, place, time and substance required by Rule 9(b) ...............................5

              (a)  Plaintiffs do not identify the precise statements,
documents or misrepresentations......................................................6

              (b)  Plaintiffs do not allege the time, place and person making
the statement ...................................................................................8

              (c)  Plaintiffs fail to allege how they were misled by the "claim"....................8

              (d)  Plaintiffs fail to allege how the use of the mail was
"in furtherance of" the scheme ....................................................8

      B.  Statements in Litigation Demand Letters Cannot Form the Basis for Mail Fraud
and are Absolutely Privileged under Florida's Litigation Privilege. .....................10

      C.  Plaintiffs' RICO claim fails for lack of a causal connection ................................13

          1.    State Farm is not the directly injured victim..............................14

i

**Page**

2.    Calculation of Damages and Distinguishing among Unrelated Causal Factors ......................................................................................................15

D.  Plaintiffs' Conspiracy Claim is Inadequately Pled ................................................18

E.  Plaintiffs Fail to Properly Plead a RICO Enterprise ...............................................20

F.  Plaintiffs' Unjust Enrichment Count Fails to State a Cause of Action.................20

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

CASES

*Allstate Ins. Co. v. Advanced Health Professionals, P.C.,*
    256 F.R.D. 49 (D. Conn. 2008)................................................................5, 7 13

*Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.,*
    501 F.3d 398 (5th Cir. 2007) ................................................................16

*Ambrosia Coal & Constr. Co. v. Pages Morales,*
    482 F.3d 1309 (11th Cir. 2007) ................................................................3, 6

*American Dental Ass'n v. CIGNA Corp.,*
    605 F.3d 1283 (11th Cir. 2010) ................................................... *passim*

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006)....................................14, 15, 16

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937, 17 L.Ed.2d 1868 (2009) ....................................... *passim*

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)........................................ 2

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008)....................................14

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
    116 F.3d 1364 (11th Cir. 1997) ................................................................3

*D.H.G. Properties, LLC v. Ginn Companies, LLC,*
    2010 WL 5584464 (M.D. Fla., Sep. 28, 2010) ................................................3, 4

*DelMonico v. Traynor,*
    50 So.3d 4 (Fla. 4th DCA 2010) ................................................................11

*Dungan v Ford,*
    632 So.2d 159, 163 (Fla. 1st DCA 1994) ................................................................1

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole,*
    950 So. 2d 380 (Fla. 2007)................................................................10

*Genord v. Blue Cross and Blue Shield of Mich.,*
    2008 WL 5070149 (S.D. Fla., Nov. 24, 2008)........................................18

*Green Leaf Nursery v. E.I. DuPont De Nemours and Company,*
    341 F.3d 1292 (11th Cir. 2003) ................................................................15

**Page**

*Hemi Group, LLC v. City of New York,*
    130 S.Ct. 983 (2010)...............................................................................15

*Holmes v. Sec. Investor Prot. Corp.,*
    503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)......................................14, 16, 17, 18

*In re Managed Care Litigation,*
    2009 WL 812257 (S.D. Fla., Mar. 26, 2009)................................................... *passim*

*International Bhd. of Teamsters v. Philip Morris, Inc.,*
    196 F.3d 818 (7th Cir. 1999) .......................................................................1, 18

*Ironworkers Local Unioin No. 68 v. Astrazeneca Pharm. LP,*
    585 F. Supp.2d 1339 (M.D. Fla., Nov. 4, 2008)............................................18, 20

*Jackson v. Bellsouth Telecomms.,*
    372 F.3d 1250 (11th Cir. 2004) ......................................................................2, 11, 18

*Kelly v. Palmer, Reifler & Assocs., P.A.,*
    681 F.Supp.2d 1356 (S.D. Fla. 2010) ..............................................................11

*Pennsylvania Employees Ben. Trust Fund v. Astrazeneca Pharm., LP,*
    2009 WL 2231686 (M.D. Fla., Jul. 20, 2009) ........................................................20

*Petty v. Gen. Accident Fire & Life Assurance Corp.,*
    365 F.2d 419 (3d Cir. 1966).........................................................................11

*Raney v. Allstate Ins. Co.,*
    370 F.3d 1086 (11th Cir. 2004) ....................................................................12

*Ross v. Blank,*
    958 So.2d 437 (Fla. 4th DCA 2007) ...............................................................11

*Sanchez v. Triple S Management Corporation,*
    446 F. Supp.2d 48 (D. Puerto Rico 2006), *affirmed,* 492 F. 3d 1 (1st Cir. 2007) ...........8, 9, 10

*Solomon v. Blue Cross & Blue Shield Ass'n,*
    574 F. Supp.2d 1288 (S.D. Fla. 2008) .................................................................18

*Sosa v. DirectTV, Inc.,*
    437 F. 3d 923 (9th Cir. 2006) .......................................................................12

*Southeast Laborers Health and Welfare Fund v. Bayer Corporation,*
    655 F.Supp.2d 1270 (S.D. Fla. 2009) ............................................................16, 18

*State Farm Mut. Auto. Ins. Co. v. Duval Imaging, LLC,*
    2011 WL 264366 (11th Cir., Jan. 28, 2011) .........................................................11

iv

**Page**

*United States v. Lee*,
   427 F.3d 881 (11th Cir. 2005), *cert. denied*, 546 U.S. 1221, 126 S.Ct. 1447, 164
   L.Ed.2d 145 (2006) .................................................................................................12, 13

*United States v. Marbella*,
   73 F.3d 1508 (9th Cir. 1996) ...............................................................................13

*United States v. Pacheco-Ortiz*,
   889 F.2d 301 (1st Cir. 1989)..............................................................................8, 9, 10

*United States v. Pendergraft*,
   297 F.3d 1198 (11th Cir. 2002) ...............................................................11, 12, 13

*West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
   287 Fed.Appx. 81 (11th Cir. 2008).......................................................................6

*Williams v. Mohawk Indus., Inc.*,
   465 F.3d 1277 (11th Cir. 2006) ...........................................................................13

Defendants, JEFFREY KUGLER, M.D. and NATIONAL ORTHOPEDICS AND NEUROSURGERY P.A., by and through their counsel, hereby file this Memorandum in Support of their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), averring as follows:

## I.    __INTRODUCTION__

By this suit, State Farm seeks to overturn more than 100 years of state and federal law which holds that the victim of a tort is the proper plaintiff, and that insurers and other third party providers of assistance and medical care to the victim may recover only to the extent that their contracts subrogate them to the victim's rights. *See, International Brotherhood of Teamsters v Philip Morris, Inc.*, 196 F.3d 818, 822 (7th Cir. 1999).  Having never been a party to any of the lawsuits and settlements identified on Exhibit A to the Amended Complaint, and having made payments in those matters as a result of its contractual obligation to its insured, State Farm now seeks another bite at the apple by a direct action against the defendants.  State Farm's alleged injury, however, like the third party payors in the tobacco lawsuits and the third party payors in the "off label" drug cases, is remote, the chain of causation long, the risk of double recovery palpable and the damages wickedly hard to calculate. *Id., at 825.*

Under the scheme alleged, State Farm is not the directly injured party; it is the auto accident victim that becomes the client of attorneys that allegedly submit their clients for allegedly bogus medicine and then becomes the patient of the doctors and medical providers that perform the allegedly bogus medicine.

However, under Florida law, the measure of damages for medical care rendered to an injured auto crash victim is based on "a sum representing the reasonable charges of treating physicians/healthcare providers for all medical care and treatment *reasonably obtained*, as determined from the perspective of the injured plaintiff." *See,* Fla. Std. Jury Instr. 501.2(b); *Dungan v Ford,* 632 So.2d 159, 163 (Fla. 1st DCA 1994).  The *necessity* of a procedure "involves a question of necessity *from the perspective of the injured party*, rather than from the perspective of a medical expert." *Dungan¸ supra,* at 163.

State Farm simply ignores the fact that the accident victim has the legal right under Florida law to chose the elective procedures of which State Farm complains, not State Farm. Instead, State Farm seeks to insert itself into the decision process, claiming that the procedures were "medically unnecessary." This exact same claim was made by State Farm to the Florida

1

Board of Health, Department of Medicine, concerning these same doctors and rejected outright.[1] Unhappy with the results of the litigated cases on Exhibit A, unhappy with the results of the settled cases on Exhibit A, and unhappy with the determination of the Board of Medicine, State Farm brings these RICO and fraud based claims.  For the reasons set forth below, State Farm's claims should be dismissed.

## II.   STANDARD OF REVIEW

### A.   Standard Pursuant to Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and the Court's more recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 17 L.Ed.2d 1868 (2009), altered the manner in which courts are to analyze a Rule 12(b)(6) motion to dismiss. A claim must be plausible and "a claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.* (italics supplied).  The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Citing Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

"Conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal."  *See, American Dental Association v. CIGNA Corporation,* 605 F.3d 1283, 1291 (11th Cir. 2010); *Jackson v. Bellsouth Telecomms*., 372 F.3d 1250, 1262 (11th Cir. 2004). These types of allegations are not to be considered when the court is determining whether the factual allegations of the complaint are enough to state a plausible claim. *Iqbal*, 129 S. Ct at 1950.

Courts considering motions to dismiss should adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  Importantly, as the Supreme Court stated in *Iqbal,* as it had in *Twombly,*  courts may infer from the factual

---

[1]  See Request for Judicial Notice filed by Dr. Bistline and exhibits thereto.

allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Id.* at 1951-52 (quoting *Twombly,* 550 U.S. at 567, 127 S.Ct. at 1972).

**B.    Specificity Requirements Pursuant to Rule 9(b)**

Because Plaintiffs' section 1962(c) claim is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal,* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See also Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1316 (11th Cir. 2007) holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)). *See, American Dental Association v. CIGNA Corporation*, 605 F.3d 1283, 1291 (11th Cir. 2010).  In addition, Plaintiffs' fraud-based claims, including the common law fraud and FDUTPA claim (based on fraud) must also meet the heightened pleading requirements of Rule 9(b). *See, D.H.G. Properties, LLC v. Ginn Companies, LLC*, 2010 WL 5584464 (M.D. Fla., Sep. 28, 2010) (fraud and FDUPTA claims must comply with Rule 9(b)).

The Eleventh Circuit, pursuant to Rule 9(b), requires that a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380-81 (11th Cir.1997) (applying the requirements to a RICO fraud complaint). *See also, American Dental, supra at 1291*. In addition, the Plaintiffs must also allege facts with respect to each defendant's participation in the fraud. *Id.* at 1381.

When applying both the Rule 12(b)(6) and Rule 9(b) framework to Plaintiffs' Amended Complaint, it is abundantly clear that Plaintiffs' RICO and state law claims are wholly deficient.

### III.   LEGAL ARGUMENT

**A.   Plaintiffs' RICO, Common Law Fraud and FDUTPA Claims Must Be Dismissed For Failure To Satisfy The Requirements Of *Iqbal* and 9(b)**

Plaintiffs' RICO and state law fraud and FDUTPA claims must be dismissed for failure to satisfy the requirements of *Iqbal* and Rule 9(b). Plaintiffs' RICO claims are based on their allegation that Defendants engaged in predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341. <u>See</u> AC at ¶146. Plaintiffs have also asserted claims of common law fraud; s<u>ee</u> AC, at ¶¶ 155-160; and under the Florida Deceptive and Unfair Practices Act ("FDUTPA"); s<u>ee</u> AC, at ¶¶ 161-164. Plaintiffs' fraud-based claims, including the common law fraud and FDUTPA claim, must meet the heightened pleading requirements of Rule 9(b). *See, D.H.G. Properties v. Ginn*, 2010 WL 5584464 (M.D. Fla. 2010)(fraud and FDUPTA claims must comply with Rule 9(b))..

**1.   Plaintiffs' RICO, fraud and FDUTPA claims are merely conclusory, and therefore must be dismissed under *Iqbal***

All claims must first meet the general pleading requirements of Rule 8, as interpreted by *Iqbal*.  Under the first step in *Iqbal*, a court must separate out allegations that are not entitled to the assumption of truth.  *Iqbal*, 129 S.Ct. at 1950.

 In the context of fraud claims, allegations that a communication was made "knowingly or fraudulently" or was "false" are not entitled to an assumption of truth under *Iqbal. See, American Dental Association v. CIGNA Corporation*, 605 F.3d 1283, 1293 (11th Cir. 2010). Allegations that defendants were "involved in a common scheme and conspiracy" and "each defendant and member of the conspiracy with knowledge and intent agreed to the overall objective of the conspiracy" and "agreed to commit acts of fraud" are the kinds of "formulaic recitations" that the Court in *Twombly*  and *Iqbal* said were not entitled to assumption of truth and were insufficient. *See American Dental Association,* 605 F.3d 1293, 1294.

Here, Plaintiffs' allegations of fraud are merely recitations of legal conclusions couched in factual language or are the type of bald allegations prohibited by *Iqbal.  Id.* Plaintiffs' assert, for example, (**conclusory statements are in italics**): that "doctor Jane Bistline…*knowingly* performs *medically unnecessary* discograms and assists in the performance of *medically unnecessary* PD's based upon the purported results of her discograms" (AC, ¶ 2(a)); that "doctor Jeffrey Kugler …*knowingly* performs *medically unnecessary* PD's based upon the purported

4

results of discograms by Dr. Bistline (AC, ¶ 2(c)); that Kugler and Bistline use their medical practices "to submit *fraudulent* charges and documentation relating to the professional fees for the *medically unnecessary* discograms and PD's" (AC, ¶ 2(c)); that the Surgery Center "is used to *knowingly* submit *fraudulent* charges for facility fees relating the *medically unnecessary* discograms and PD's" (AC, ¶ 2(d)).

Absent the conclusory language that the procedures were "medically unnecessary" and the charges for those procedures were "fraudulent charges," Plaintiffs have done no more than allege that doctors performed medical procedures on patients and billed for those services.  As discussed below, Plaintiffs "medically unnecessary" allegations are not only conclusory, but they are not supported by any facts as Plaintiffs never identify any misrepresentation in any document that supports this allegation and cite to no statute, rule or other standard that identifies "medical necessity."   An opinion is not a fact. *See, Allstate Ins. Co. v. Advanced Health Professionals, P.C.*, 256 F.R.D. 49, 61 (D. Conn. 2008) (amended complaint failed to establish why bills listing treatments provided that plaintiff alleged was unnecessary constitutes fraud as opposed to challenges to choice and proficiency of the medical treatment rendered as shown in the bills).

When Plaintiffs' relevant allegations are analyzed as required by *Twombly* and *Iqbal*, they are revealed as devoid of any factual allegations that, taken as true, would make their alleged claims against Defendants plausible. In fact, when the conclusory allegations are removed and the legal conclusions disregarded, the Complaint merely alleges that accident victims hire lawyers, accident victims seek treatment from doctors, patients, after explanation of the potential risks and benefits, consent to undergo those treatments, the doctors provide the treatments and expect payment from the patients typically under letters of protection and that the person responsible for the accident obtains an attorney and they either settle the case or go to trial. Plaintiffs are masquerading differing medical views as to the efficacy of a procedure as fraud and allegations of lawful, independent conduct as a conspiracy.

2.     **Plaintiffs' RICO, fraud and FDUTPA allegations lack the allegations of date, place, time and substance required by Rule 9(b).**

Even if Plaintiffs' allegations could be accepted as true under *Iqbal,* they would fail to meet the heightened pleading requirements of Rule 9(b). In order to satisfy the heightened pleading requirements of 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the

content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *American Dental Association v. CIGNA Corporation*, 605 F.3d 1283, 1291 (11th Cir. 2010)(citations omitted). And, "[t]he plaintiff must allege facts with respect to each defendant's participation in the fraud." *Id.* at 1291.  Where, as here, a complaint provides only a list of communications without identifying specific misrepresentations contained therein, "the complaint has not alleged a right to relief that is 'plausible on its face.'"  *Id.* at 1291.

       Plaintiffs have failed to meet any of the requirements of Rule 9(b). Plaintiffs point to 198 "RICO Events" they allege are in furtherance of the alleged "fraudulent conspiracy."  *See* AC, at ¶ 146.  Plaintiffs' only alleged misrepresentations set forth in these "claims" are that "discograms and PD's were medically necessary" and that "certain PD's were correctly billed under CPT Codes 63056 and 63057."  *See,* AC, ¶146.

### (a)     Plaintiffs do not identify the precise statements, documents or misrepresentations

       Nowhere in their Amended Complaint do the Plaintiffs identify "the precise statements, documents, or misrepresentations made by any specific defendant."   They allege the "defendants" made or caused to be made a misrepresentation in the "claim" that the discograms and PD's were "medically necessary," but no where do they allege where that statement appears; how the "defendants" individually stated that in the "claim;" or even what comprises the "claim" The same is true for the alleged misrepresentation that certain PD's were "correctly billed under CPT Codes 63056 and 63057."  Plaintiffs fail to allege how these "defendants" precisely made this representation and in what document. In a case with multiple defendants, "the complaint must contain specific allegations with respect to each defendant. Generalized allegations lumping multiple defendants together are plainly insufficient." *In re Managed Care*, *supra*, citing *Ambrosia Coal & Construction Co. v. Pages Morales,* 482 F.3d 1309, 1316-17 (11th Cir. 2007) and *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.,* 287 Fed.Appx. 81 (11th Cir. 2008).

       Presumably, the Plaintiffs are asserting that the "claim" is the "demand letter" of which they attach a "representative" demand letter as Exhibit I to the Amended Complaint. *See,* AC,

¶98.[2] The "representative demand letter" states that it is "submitted on behalf of [the law firm's client] in a good faith effort to amicably resolve this case prior to proceeding with trial." *Id.*, at 2. The letter further states that it is being submitted and will be "utilized solely for the settlement negotiation process." *Id*, at 2. The letter goes on to explain in detail the liability issues presented, the medical treatments provided and provides copies of all of the medical records and repair costs and accident report.

Significantly absent from the "representative demand letter" is any representation that the procedures were "medically necessary" according to any statute, rule or other standard. In fact, the demand letter and attachments explain in detail the course of conservative care initially recommended and the patient's failure to improve. It further explains that "Dr. Kugler discussed several options with [the patient], including consideration of a discogram and percutaneous discectomy. The risks and benefits were explained to [the patient] and she agreed to proceed with the surgery." *Id.*, at 7. All of the procedures performed and charges for those procedures are then explained in detail in the representative demand letter, without any reference to coding, and in the attached medical records.

A careful reading of the demand letter shows that it is nothing more than the law firm's legal opinion as to the value of the claim and the liability of State Farm's insured (and State Farm by virtue of its contract for indemnity with its insured) for damages under Florida law. For the reasons discussed below, demand letters are absolutely privileged and cannot form the basis for RICO mail/wire fraud claims or state law fraud, FDUTPA or unjust enrichment claims.

Plaintiff's Exhibit A does not comply with Rule 9(b) either. A similar chart was rejected in *Allstate Ins. Co. v. Advanced Health Professionals, P.C.*, 256 F.R.D. 49, 59-63 (D. Conn 2008) *motion for reconsideration denied sub nom Allstate v. Passaro-Henry*, 2009 WL 2925291 (D. Conn 2009)("chart, which lists the treatment(s) Defendants provided for each patient and labels each treatment as "unnecessary" does not explain why the treatment was unnecessary, why seeking payment for unnecessary (or worthless) treatment actually rendered is fraudulent, or why Defendants submission of bills listing such treatment constitutes fraud, as distinguished from challenges to choice and proficiency of medical treatment rendered, manifested by the records themselves.") *Id.,* at 60.

---

[2]  Attached as Exhibit A is the full demand package that Plaintiff's received with the "representative demand letter" attached as Exhibit I to the Amended Complaint. This is the complete document referenced in part in the AC. *See, Brooks v Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

         **(b)**      **Plaintiffs do not allege the time, place and person making the statement**

The requirement that Plaintiffs allege "the time, place, and person responsible for the statement" is not met either.  Plaintiffs completely fail to identify with any specificity what the alleged "claim" consisted of or who sent it and to whom it was sent.  Instead, Plaintiffs in a wholly conclusory manner allege only that the defendants intentionally and knowingly made, and caused to be made, false and fraudulent statements of material fact to State Farm. AC, ¶146. This is exactly the "formulaic recitation" that doesn't even survive *Iqbal*, much less the heightened pleading required by Rule 9(b).  Additionally, it is once again impermissibly lumping all defendants together.

         **(c)**      **Plaintiffs fail to allege how they were misled by the "claim."**

Plaintiffs also completely fail to allege the "content and manner in which these statements misled the Plaintiffs."  If, as it appears, the "representative demand letter" is the "claim," then Plaintiffs had full disclosure of all of the facts concerning the discogram and percutaneous discectomy as well as all charges for those treatments.

         **(d)**      **Plaintiffs fail to allege how the use of the mail was "in furtherance of" the scheme**

The mail fraud statute requires that the use of the mails be shown to be "in furtherance of the scheme." In *United States v. Pacheco-Ortiz*, 889 F.2d 301, 305 (1st Cir. 1989), the First Circuit announced how to determine whether a particular mail transmission was in furtherance of the fraudulent scheme:

> Within the mail fraud statute as furthering the illegal scheme are those mailings that: assist the criminal in carrying out the fraud; or delay discovery of the fraud… Outside the statute as not furthering the illegal scheme are those mailings that: serve to put the defrauded party on notice regarding the fraud; make the execution of the fraud less likely, oppose the scheme; or disclose the nature of the fraud.

*Id.*, at 305; *see also, In re Managed Care Litigation*, 2009 WL 812257 at *9 (S.D. Fla., Mar. 26, 2009).

In *Sanchez v. Triple S Management Corporation*, 446 F.Supp.2d 48 (D. Puerto Rico 2006), *affirmed,* 492 F. 3d 1 (1st Cir. 2007), doctors and pharmacies sued an insurer under RICO alleging that the insurer engaged in a fraudulent scheme to overcharge and underpay the doctors and pharmacies through a pattern of mail and wire fraud. The doctors and pharmacies alleged

that Explanations of Benefits ("EOBs") and Explanation of Payments ("EOPs") allegedly misled them into believing they were being paid the correct amount for their services.  After careful analyzing the actual documents, as opposed to how they were characterized in the complaint, the court determined the EOBs and EOPs were not "in furtherance of" the scheme, they were, quite the opposite, the very catalyst of how Plaintiffs became aware of the alleged scheme:

> "Instead, these communications were the very catalyst through which Plaintiffs became apprised of the allegedly fraudulent scheme…There was "no secret;" the EOP contained "nothing hidden" or "concealed". Plaintiffs "noticed" Defendants' objectionable practices "through the EOP's themselves." Defendants clearly disclosed how and what they were charging in relation to the claim submission process for Plaintiff pharmacists. The information [Defendants] gave in the circular letters alerted Plaintiffs to the allegedly fraudulent behavior…

*Id, at* 55-57.

Similarly, in *In re Managed Care*, 2009 WL 812257 (S.D. Fla., Mar. 26, 2009), Judge Moreno rejected similar conclusory allegations that were alleged to be "in furtherance of the scheme without describing exactly how they did so."  *Id.*, at *9.  In that case, the only particularized allegations regarding specific examples of mail fraud involved the individual defendants mailing of EOBs.  The Court held as follows:

> "The EOB's simply informed Plaintiffs that they were not reimbursed for a given procedure under the CPT code they initially submitted their claim under. In addition, it is not clear how EOB's assisted in furtherance of the scheme.  If anything, the EOB's helped to reveal the fraud as they put Plaintiffs on alert that they were not properly paid in accordance with CPT. They, therefore, fall outside the scope of the mail and wire fraud statutes and do not further an illegal scheme. (citing United States v. Pacheco-Ortiz, 889 F.2d at 305).

*Id.*, at *9(underscore added).

*Sanchez, Pacheco-Ortiz* and *In re Managed Care*, hold that mailings that put the party on notice of the alleged fraud or disclose the alleged fraud are not "in furtherance of the scheme" and fall outside the mail fraud provision. State Farm's conclusory assertions that the "claims" "submitted to State Farm" contained material misrepresentations concerning the "medical necessity" of discograms and PD's and concerning how these procedures were "correctly coded" are insufficient.  Other than these conclusory assertions, State Farm makes no effort to plead exactly what factual misrepresentation was in the "claims" and how State Farm was "misled."

9

For example, the "representative demand letter" (Attached as Exhibit A) allows State Farm to determine from the demand letter and attachments the following:

1.      The law firm that was representing the Plaintiff;

2.      The value of the insured's coverage (whether over $100,000 or not)

3.      The exact procedures performed, described in detail (discograms and PD's and at what levels

4.      The complete medical records for the procedures and facility showing what was done;

5.      The charge for the SpineWand;

6.      The charge for each discogram and PD

7.      The doctors and surgery centers and suppliers involved in the claim.

These facts, like those in *Sanchez, Pacheco-Ortiz* and *In re Managed Care,* are the catalyst for how State Farm would have become aware of the alleged "scheme" and cannot be in furtherance of it.   There is absolutely nothing alleged by State Farm that was "hidden" or "concealed" and, in fact, the documents reveal the alleged scheme from the demand letters, invoices and medical records themselves.

**B.      Statements in Litigation Demand Letters Cannot Form the Basis for Mail Fraud and are Absolutely Privileged under Florida's Litigation Privilege**

In Florida, the litigation privilege provides legal immunity for actions that occur in judicial proceedings. In *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380 (Fla. 2007), the Supreme Court of Florida applied the doctrine in a pre-filing setting.  In that case, prior to filing foreclosure actions, the law firm representing the lenders sent "reinstatement letters" to the plaintiffs, "stating that [they] were in default on their respective mortgages and faced foreclosure unless they reinstated the mortgages by bringing them up to date." *Id.,* 950 So.2d at 381.  The letters also claimed that the plaintiffs owed the lenders "certain costs." *Id.* The plaintiffs paid the demanded charges to prevent foreclosure proceedings from commencing but then subsequently sued the lenders under FDUTPA and Florida's Consumer Collection Practices Act, alleging that the amount the lenders demanded "was in excess of actual costs" that the lenders incurred. *Id.*

The Supreme Court of Florida held that the suit was absolutely barred by the litigation privilege, holding that "[t]he nature of the underlying dispute simply does not matter" and that

"[t]he litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Id.* at 384. *See also, Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F.Supp.2d 1356 (S.D. Fla. 2010) (construing *Echevaria* as holding FDUTPA claims are barred by litigation privilege where based on attorney demand letters). "The falsity or maliciousness of the alleged statements is irrelevant to this analysis." *See, DelMonico v. Traynor*, 50 So.3d 4, 7 (Fla. 4th DCA 2010); *quoting Ross v. Blank*, 958 So.2d 437, 441 (Fla. 4th DCA 2007).

The Eleventh Circuit recently recognized this litigation privilege and held that Florida law governs whether the privilege applies. *See, State Farm Mutual Automobile Insurance Company v. Duval Imaging, LLC*, 2011 WL 264366 (11th Cir. Jan. 28, 2011).

Applying Florida law, the Eleventh Circuit has repeatedly applied litigation immunity to bar claims based on alleged "frauds" conducted during "settlement" negotiations. For example, in *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250 (11th Cir. 2004), "the plaintiffs' state law claims rest[ed] on allegations that the defendants improperly extracted an unfairly low settlement from the plaintiffs, and negotiated settlement terms that allowed plaintiffs' counsel to take too high a percentage of the settlement funds." 372 F.3d at 1275. Since the allegedly fraudulent misrepresentations were made during "the course of settlement negotiations," the Eleventh Circuit held that they were immune. *Id.*, *citing Petty v. Gen. Accident Fire & Life Assurance Corp.*, 365 F.2d 419, 421 (3d Cir. 1966) (immunizing statements made in a settlement conference because "the negotiation of a settlement is part of a judicial proceeding").

In *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002), the Eleventh Circuit barred mail fraud counts that were based on the mailing of a motion that had attached false affidavits. The indictment in *Pendergraft* alleged that the defendants unlawfully used false affidavits and made false statements "in an effort to induce the payment of money by the Marion County government through the fear of economic loss." *Id.*, at 1206. The Eleventh Circuit, addressing the language and history of the mail fraud statute, held that a threat to sue, even when accompanied by false statements, was not a scheme to "defraud." *Id.* at 1209 (citations omitted).

> The possibility of an unfavorable verdict, based on perjurious
> testimony, may have caused Marion County to fear the lawsuit.

11

> But fear is different from fraud. A scheme to frighten is simply not criminalized by the mail-fraud statute.

*Id.* at 1209.

The Court stated "there are limits to the types of schemes that the mail-fraud statute encompasses." "The possibility of an unfavorable verdict, based on perjurious testimony, may have caused Marion County to fear the lawsuit. But, fear is different from fraud. Fear of economic loss is not fraud." *Id.*, at 1209. Fear of economic loss is exactly what State Farm alleges in the Amended Complaint. Specifically, State Farm alleges that the fear of exposing itself to bad faith liability leverages State Farm into settling claims within policy limits. *See, AC,¶* 24.

In *Sosa v. DirectTV, Inc.*, 437 F. 3d 923 (9th Cir. 2006), the Ninth Circuit expressly held that *Noerr-Pennington* doctrine provided immunity to statements made in demand letters. In *Sosa*, the plaintiffs alleged that DirectTV "made false representations of fact and law, and that as a result, Sosa settled DirectTV's claims." *Id.,* at 940. The Court first held that "it is well established that misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions and may not be relied upon absent special circumstances not present here." *Id.* at 940.

The *Sosa* Court held:

> "Accordingly, we hold that RICO and the predicate statutes at issue here (mail fraud) do not permit the maintenance of a lawsuit for the sending of a prelitigation demand to settle legal claims that does not amount to a sham. Because the demand letters at issue here sought settlement of claims against Sosa under the Federal Communications Act, and no sham is claimed, they cannot form the basis of liability under RICO."

*Id.* at 941.

*See also Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1088 n.2 (11th Cir. 2004) (affirming dismissal of civil RICO case based, in part, on mail fraud predicates), *Cf. United States v. Lee*, 427 F.3d 881, 890-91 (11th Cir. 2005) (holding that *Pendergraft* would not bar a perjury prosecution and limiting *Pendergraft* to situations where the recipient of the demand letter could not have been deceived by the false statements), *cert. denied*, 546 U.S. 1221, 126 S.Ct. 1447, 164 L.Ed.2d 145

(2006);  *United States v. Marbella*, 73 F.3d 1508 (9th Cir. 1996) (affirming conviction of attorney who paid "paid cappers who brought him cases with medical bills he knew were inflated" because they included bills for visits to clinic that did not occur and then used the inflated bills to obtain insurance settlements in situation where insurance companies had no reason to know that the bills were inflated).

The instant case involves allegedly "inflated" settlement demands, not demands for services that were, in fact, never performed.  Like the situations in *Pendergraft* and unlike the situations in *Marbella* and *Lee*, State Farm was not and could not have been "deceived" by the CPT codes because the demand packages contained all the backup medical documentation, in precise detail, which openly and accurately disclosed the nature of procedures that were being billed and the amounts requested for those specific procedures. *See,* Attached Exhibit 1. Additionally, State Farm could not have been deceived by a failure to follow the standard of care State Farm alleges in the Amended Complaint since the demand package explained, in detail, what was done concerning the procedures.  *See Allstate Ins. Co. v. Advanced Health Professionals, P.C.*, 256 F.R.D. 49, 59-63 (D. Conn 2008) *motion for reconsideration denied sub nom Allstate v. Passaro-Henry,.* 2009 WL 2925291 (D. Conn 2009) (failure to allege facts that documents provided lied about or obfuscated the treatment protocol or claimed reimbursement for treatment rendered pursuant to a protocol in a manner designed to hide the protocol is insufficient. Where the claim forms disclosed this conduct by defendants, plaintiffs must show how those claims were fraudulent in the manner required by Rule 9(b)).

Consequently, the litigation privilege bars the filing of RICO, fraud and FDUTPA claims based upon the settlement demand packages.

**C.**     **Plaintiffs' RICO claim fails for lack of a causal connection**

The Complaint requires dismissal because, under established RICO principles, the factual allegations do not sufficiently allege that the behavior complained of proximately caused the Plaintiffs an injury. It is well established that under both *Section 1964* and *1962(c)*, the Complaint must satisfactorily tie the alleged racketeering activity to the Plaintiff's injury. *See, Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277 (11th Cir. 2006).  In other words, the Plaintiff must set forth how each Defendant's wrongful action caused the Plaintiffs the injury they claim

13

to have suffered.

The Supreme Court has set forth the principles upon which resolution of the RICO causation issues presented herein rely. *See, e.g. Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 453, 126 S.Ct. 1991, 1994, 164 L.Ed.2d 720 (2006); and *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008).

When a court evaluates a RICO claim for proximate causation, the central question is must ask is whether the alleged violation led directly to the plaintiff's injuries." *See, Anza,* 547 U.S. at 461.  A plaintiff who complains "of harm flowing merely from the misfortunes vested upon a third person by the defendants' acts [is] generally said to stand at too remote a distance to recover." *Id.* at 457 (quoting *Holmes,* 503 U.S. at 268). Under the remoteness concept, standing is limited to those "directly" injured by a defendant's conduct. *See id.,* at 267-270.

Whether or not a plaintiff can establish proximate cause requires a court to consider the policy formulated by the Supreme Court cases requiring a direct injury:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without the problems attendant upon suits by plaintiffs injured more remotely.

*Holmes,* 503 U.S. at 269-70, 112 S.Ct. 1311.

### 1.  State Farm is not the directly injured victim

Applying the *Holmes* and *Anza* policy factors to the case herein, they weigh heavily against a finding of proximate cause. First and foremost, the persons "directly injured" under the allegations of the Amended Complaint are the clients of the law firms whose attorneys allegedly abrogate all legal obligations to their clients by sending them to have bogus medical procedures at substantial risk to the client's health.  These same clients then become alleged victims of the doctors who perform "medically unnecessary" discograms and PDs on these patients.  These immediate victims of the alleged RICO scheme can certainly be expected to pursue their own claims. *See, Anza.,* at 458-460.

14

State Farm cannot circumvent the proximate cause requirement simply by asserting that the defendant's scheme was aimed at State Farm. *See, Anza,* at 460.The allegation that State Farm was the target of the scheme does not overcome the requirement that there must be a direct injury. *See, Hemi Group, LLC v. City of New York,* 130 S.Ct. 983 (2010); *Green Leaf Nursery v. E.I. DuPont De Nemours and Company*, 341 F.3d 1292, 1307-1308 (11th Cir. 2003) (test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether the harm to plaintiff was reasonably foreseeable or whether plaintiff was the specific target of the alleged scheme).

**2.   Calculation of Damages and Distinguishing among Unrelated Causal Factors**

The second "motivating principle" for requiring proximate causation under section 1964(c) is "the difficulty of calculating damages caused by remote actions and distinguishing among causal factors unrelated to the asserted racketeering activity." *See, Anza*, at 458-460.  Applying this principle, Plaintiffs assert as their injury the money they paid as a result of verdicts and settlements of PI cases that involved discectomies and PDs. *See, AC,* ¶¶1-4   Apart from this conclusory allegation, conspicuously absent from the Amended Complaint is any allegation that, as a result of the mail fraud:

1.      Plaintiffs made any payment to (or received any request for payment from) any of the Defendants ;

2.      That any defendant made any demand on Plaintiffs for any payments;

3.      That Plaintiffs, for any of the claims involved, made any payment that was other than one lump sum amount to the claimant-accident victim (and his or her attorney) without any breakdown or designation other than as covering any and all claimant's claims respecting the accident;

4.      That Plaintiffs made any payment with any specific mention of or allocation of amounts to medical expenses;

5.      Whether these claims were disposed of by judgment, or after trial, or by settlement after suit and before trial, or by settlement before suit.

6.      Whether, on an individual claim basis,  any of the amounts paid thereon by Plaintiffs was for property damage, lost earnings or earning capacity, pain and suffering or bodily impairment, or medical expense for service rendered by defendants other than discography and PDs.

15

7.      Except for the claim of payment, there is no allegation whether or not the Plaintiffs' liability evaluation (e.g., was the insured at fault; was the claimant at fault; how clear or disputed were these matters) on any specific claim or group of claims, was not the deciding factor.

8.      Except for the claim of payment, there is no allegation whether or not the Plaintiffs' caused the claimant to undergo a compulsory medical examination by one if its designated doctors and whether the CME doctor's evaluation was not the deciding factor.

The Fifth Circuit Court of Appeals recognized in a similar situation that there are a whole host of reasons-*other* than reliance on reports from the adverse party's doctors- that might lead a party to settle:

> "[S]everal factors other than reliance on the truth of an opponent's allegations may influence a party's ultimate decision to settle disputed claims in a lawsuit, including the nature of the liability facts, the nature of the damages alleged, the number of parties involved, the perceived propensity of a jury in the forum to return a significant damage award, the level of skill of opposing counsel, the quality of the appearance of the fact witnesses and parties, and the costs associated with continued discovery, trial preparation, and trial itself."   *Atlantic Lloyds Ins. Co. v. Butler,* 137 S.W.3d 199, 227 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

*Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.,*  501 F.3d 398, 411 (5th Cir. 2007).

Just as the Supreme Court discussed in *Anza*, numerous factors unconnected to the asserted fraud (mailing "claims" that allegedly claim the discograms and PDs were "medically necessary" and incorrectly designating CPT codes), would have played a part in State Farm's decision whether to settle any of the claims causing a "discontinuity between the RICO violation and the asserted injury. *Id*., at 458.

Additionally, this type of remote injury and consideration of all of the other factors, unrelated to the alleged false mailings, is exactly why the Supreme Court in *Holmes* and *Anza* required a direct injury.  An excellent example of the detailed analysis *Holmes* sought to avoid is found in *Southeast Laborers Health and Welfare Fund v. Bayer Corporation,* 655 F.Supp.2d 1270 (S.D. Fla. 2009) where the plaintiffs claimed RICO mail fraud based on Bayer's aggressive marketing of the drug Trasylol for "off label" purposes.  Judge Middlebrooks, in finding no proximate causation, stated:

16

"Doctors are presumed to go beyond advertising medium and use their independent knowledge in making medical decisions. Loss calculation necessarily would require an analysis of whether or not a particular physician ever received or relied on Bayer's allegedly fraudulent statements, and whether or not a physician, knowing the risk vs. benefit of Trasylol, would still have used it during an operation.  It would require a determination as to how many doses a patient received, and whether or not the number of doses was tied into any fraudulent marketing.  It would also require speculation as to what alternative medications a particular physician would have ordered in a particular surgery, and how much that medication would have cost. A cost calculation would be problematic, as costs clearly would have fluctuated over the ten year period. Lastly, it would entail determining those patients who received Trasylol who did not suffer any adverse reactions and who might have been helped by use of the drug.

With that many factors that could be unrelated to the RICO fraudulent marketing, Judge Middlebrooks found "allowing the [p]laintiffs to move forward on their civil RICO claims would present precisely the types of problems the *Holmes* Court sought to avoid. *Id*., at 1281.

Consider the same factors that Plaintiffs' Amended Complaint raises:

(1)     The insured may have been subjected to a compulsory medical exam; if the State Farm chosen physician determined the discography and PD to be not medically necessary, how could State Farm have relied upon the medical records in the mailings?

(2)     The underlying claim may have been reviewed by State Farm's "coding expert" which would again cast doubt on State Farm's alleged reliance on the mailings;

(3)     The insured in any litigation would have been represented by an attorney. Did the attorney, in his/her case evaluation, rely upon the medical records/coding; did the attorney, recommend against settlement; did the attorney recommend settlement for reasons other than the medical records—all of these issues (just as the judgment of the doctors in the Trasylol case) would have to be inquired into and would have been made under the professional judgment of the attorney for the defendant whose duty is to the defendant;

(4)     Did the adjusters for State Farm rely upon the medical records/coding; did they recommend settlement or against settlement; did they recommend settlement for reasons other than the discography and PDs shown in the medical records—all of these issues (just as the judgment of the doctors in the Trasylol case) would have to be inquired into;

(5)     Did the attorneys/adjusters, knowing the procedures were "medically unnecessary" and knowing the risk of trial, recommend that State Farm take the case to trial and they ultimately lost because a jury found the procedures to be reasonable or necessary?;

17

(6)      What procedures would the doctors have recommended if not the discography and PDs and what would those procedures have cost and what effect would those procedures have on the settlement or verdict amounts?

(7)      What about the patients (like in the Trasylol case) who received the discography and PDs who were helped by the procedures?

(8)      What about the other medical services provided and the property damage and the other damages that are compensable under Florida law?

The above list is only a small fraction of the many factors that go into the settlement of the claims that State Farm has identified on Exhibit A to the Amended Complaint.  For the reasons set forth in virtually all of the "off label" drug cases, which involve the same type of professional judgment and intervening causation issues as does this case, Plaintiffs cannot establish proximate causation within the scope of the policy considerations layed out in *Holmes* and *Anza. See generally, American Dental Association v. Cigna Corporation*, 605 F.3d 1283 (11th Cir. 2010);  *Solomon v. Blue Cross & Blue Shield Ass'n¸* 574 F. Supp.2d 1288 (S.D. Fla. 2008); *Genord v. Blue Cross and Blue Shield of Michigan*, 2008 WL 5070149 (S.D. Fla., Nov. 24, 2008); *In re Managed Care,* 2009 WL 812257 (S.D. Fla., Mar. 26, 2009); *Southeast Laborers Health and Welfare Fund v. Bayer Corporation¸* 655 F.Supp.2d 1270 (S.D. Fla. 2009); *Ironworkers Local Union No. 68 v Aztrazeneca Pharm., LP*, 585 F.Supp.2d 1339 (M.D. Fla. 2008).

In short, "the injury for which the plaintiffs seek compensation is remote indeed, the chain of causation long, the risk of double recovery palpable because [directly injured parties] can file their own RICO suits, and the damages wickedly hard to calculate."  *International Bhd. of Teamsters v. Philip Morris, Inc.,* 196 F.3d 818, 825 (7th Cir. 1999).  Plaintiffs' claims "flunk" the *Holmes* test.

**D.      Plaintiffs' Conspiracy Claim is Inadequately Pled**

In the Eleventh Circuit, as in many others, where the primary RICO violation fails to state a claim, then the civil RICO conspiracy claim necessarily fails. *See American Dental Association*, 605 F.3d 12831295 fn.6. (recognizing the controlling precedent in this Circuit to be "where the RICO claim fails and the conspiracy count does not contain additional allegations, the conspiracy count necessarily fails."); *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250 (11th Cir. 2004)(conspiracy claim fails where complaint fails to state a substantive violation of RICO

and conspiracy count alleges the conspiracy was to commit the same mail and wire fraud substantive violation of RICO).   In its Amended Complaint, Count III contains no additional (other than wholly conclusory) allegations other than what was alleged in Count II. (compare AC, 142-148 with AC, 149-154).  As such, if Count II fails, Count III necessarily fails.

Alternatively, Count III fails on its own.  Section 1962(d) of the RICO statute makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including section 1962(c).  In the Amended Complaint, Plaintiffs do not allege facts evidencing a specific agreement; they want the Court to draw an inference of an agreement.  Plaintiffs' offer, however, only conclusory statements in the Amended Complaint to support this inference. *See, e.g.(AC,¶¶* 2, 3, 27, 28, 151, 152). These are the kinds of "formulaic recitations" of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient. *See, Twombly,* 550 U.S. at 557; 127 S.Ct at 1966; *American Dental Association,* 605 F.3d at 1294-1295.

After this Court eliminates the wholly conclusory allegations, it is left with Plaintiffs attempts to bolster their conspiracy allegations by describing "collective" or parallel actions taken by the Defendants from which they argue the existence of an agreement may be inferred. Despite all of the allegations made in paragraphs 73 through 131 of the Amended Complaint, Plaintiffs have alleged nothing to show that any of the defendants acted in any way inconsistent with the independent pursuit of their own economic self-interest.   "Accordingly, Defendants' parallel conduct is equally indicative of rational independent action as it is concerted, illegitimate conduct and thus 'stays in neutral territory.'"  *See, American Dental Association, 605 F.3d at 1295 (quoting Twombly,* 550 U.S. at 557, 127 S.Ct. at 1966); *In re Managed Care,* 2009 WL 812257 at * 1, 5-6 (S.D. Fla. 2009).

In fact, the "obvious alternative explanation" that the Court may infer suggests lawful conduct rather than the unlawful inferences urged by State Farm. When stripped of their conclusory language, Plaintiffs allege no more than that automobile accident victims retained lawyers to represent them; the doctors and surgery center treated them for their injuries and billed the patients; the distributor of the SpineWand marketed its product; Discocare billed the patient for the SpineWand; the attorneys for the plaintiffs made settlement demands and either litigated or settled the cases; and State Farm paid those judgments or settlements to the victims.

Every one of the Defendants is engaging in "routine market conduct."  In fact, the entire personal injury tort system operates in this manner.  In short, Plaintiffs have failed to plausibly

and specifically plead a conspiracy. They have failed to allege any specific overt act that was taken in furtherance of the alleged conspiracy. They have failed to allege any facts whatsoever that would raise their allegations of conspiracy out of the realm of the merely "possible" into the realm of plausibility. Because Plaintiffs have pleaded only conclusory allegations without supporting facts, their conspiracy claims must be dismissed.

**E.        Plaintiffs Fail to Properly Plead a RICO Enterprise**

Defendants Kugler and National Orthopedics further assert, for the reasons discussed in Defendants Cutler and 2047 Palm Beach Lakes Surgery's memorandum of law, the Plaintiff fails to properly plead a RICO enterprise.

**F.        Plaintiffs Unjust Enrichment Count Fails to State a Cause of Action**

Plaintiffs' unjust enrichment count is based on the same alleged fraud supporting the common law fraud and mail fraud counts.  As such, it too has to be pled with the particularity required of Rule 9(b) and fails for the reasons stated *infra.*

In addition, where the other tort claims are dismissed for lack of proximate cause, the unjust enrichment count must be dismissed as well. *See, Pennsylvania Employees Ben. Trust Fund v. AstraZeneca Pharm., LP*, 2009 WL 2231686 (M.D. Fla., Jul. 20, 2009); *Ironworkers Local Union No. 68 v. Astrazeneca*, 585 F. Supp.2d 1339, 1346-1347 (M.D. Fla. 2008).

<u>**CONCLUSION**</u>

On the grounds stated above, Defendants request the Amended Complaint be dismissed.

JONES, FOSTER, JOHNSTON & STUBBS, P.A.
Attorneys for Defendants
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
Telephone:  (561) 650-0400
Facsimile: (561) 650-0412
Email:  rwilkins@jones-foster.com

By:     /s/ Robert W. Wilkins
        Robert W. Wilkins
        Florida Bar No. 578721
        Email:  rwilkins@jones-foster.com
        Cristopher S. Rapp
        Florida Bar No. 0863211
        Email:  csrapp@jones-foster.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 11, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorize manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By Notice of Electronic Filing:

        David Spector, Esq.
        Scott W. Atherton, Esq.
        Akerman Senterfitt
        222 Lakeview Avenue, Suite 400
        West Palm Beach, FL 33401


        JONES, FOSTER, JOHNSTON & STUBBS, P.A.
        By:     /s/ Robert W. Wilkins
                Fla. Bar No. 578721
                rwilkins@jones-foster.com

21