UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80051-CIV-HURLEY/HOPKINS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE
FARM FIRE & CASUALTY COMPANY,

      Plaintiff,

vs.

JEFFREY KUGLER, MD, JANE BISTLINE,
MD, and HELDO GOMEZ, M.D., et al.

      Defendants.

_____/

**MOTION OF DEFENDANTS HELDO GOMEZ, M.D., HELDO GOMEZ,
M.D., P.A., AND NORTH PALM NEUROSURGERY, P.L. TO DISMISS THE
AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), Defendants Heldo
Gomez, M.D., Heldo Gomez, M.D., P.A., and North Palm Neurosurgery, P.L. (collectively,
Gomez) respectfully submit this motion to dismiss the amended complaint filed by State Farm
Mutual Automobile Insurance Co. and State Farm Fire & Casualty Co. (collectively, State Farm)
in this action.[1]

State Farm asserts that the defendants perpetrated a scheme to defraud it "by submitting
fraudulent personal injury claims based upon medically unnecessary diagnostic procedures
known as provocative discograms ('discograms') and surgical procedures known as

---

[1] On March 11, 2011, the other defendants in this action filed motions to dismiss State
Farm's amended complaint. Gomez adopts the arguments raised by those defendants in support
of the dismissal of the amended complaint and incorporates them by reference herein.

percutaneous discectomies ('PDs')[2] which are performed on individuals who have been in automobile accidents."  Am. Compl. ¶ 1 (D.E. 19) (footnote added).  State Farm's complaint, however, contains nothing more than conclusory allegations, formulaic recitations of the elements of its claims, and allegations of fraud without pleading with any specificity the circumstances surrounding the supposed fraud.  As such, State Farm falls far short of its obligation to state a claim that is plausible on its face, as well as its obligation to satisfy the heightened pleading requirements of Rule 9(b).

While State Farm's pleading failures will be addressed in further detail herein, State Farm's allegations regarding the discograms and PDs at issue warrant some initial discussion in order to put its amended complaint in context.  In particular, State Farm's claims are all rooted upon the ultimate theory that the discograms and PDs were not "medically necessary" and, thus, that the defendants submitted fraudulent claims with respect to those procedures by falsely representing otherwise.  Such claims cannot, and should not, form the basis of federal RICO and state law fraud actions.

Quite simply, any statement regarding the medical necessity of a procedure performed by a licensed and qualified physician amounts to nothing more than a statement of opinion.  As such, it cannot form the basis of fraud claims predicated upon misrepresentation.  To hold otherwise would serve only to permit federal RICO claims and state-law fraud claims to stand where a complaint does nothing more than question the exercise of reasoned and independent medical judgment by a physician.  Indeed, a review of the allegations raised by State Farm in support of its claim that the procedures were not medically necessary demonstrates this fact.

---

[2] While the procedures performed by Dr. Gomez are more properly identified as intradiscal decompressions, Gomez will use the "PD" terminology of the amended complaint herein for ease of reference.

State Farm, in essence, alleges that the discograms and PDs performed by Gomez and certain of the other defendants were not "medically necessary" because (1) they have little to no efficacy; (2) they should not be performed on accident patients; (3) the discogram results were unreliable because certain "protocols" were not followed in performing them; and (4) defendants have performed what State Farm has characterized as a high number of PDs over the years."[3] These, like any purported representations by the defendants that the procedures were medically necessary, are all matters of opinion and are based upon the exercise of medical judgment.

For example, State Farm bases its allegation that these procedures have little to no efficacy on purported studies that have been conducted.  The mere fact that certain alleged studies may have called the efficacy of the procedures into question, however, does nothing more than support the unremarkable proposition that there are differing views or schools of thought regarding the use of these procedures.  Such a proposition cannot support the conclusory allegation that such procedures have no efficacy and are not medically necessary.  This is particularly true where, as here, such procedures have been held to satisfy *Daubert*'s scientific reliability standard – even when under attack by State Farm itself in the accident injury context, *see, e.g.*, *Hough v. State Farm Ins. Co.*, No. 06-10764, 2007 WL 1500181 (E.D. Mich. May 22, 2007)[4] – and where such procedures have not been expressly pronounced as medically

—————————————

[3] State Farm also relies heavily on a Medicare non-coverage determination with respect to the PDs.  As State Farm does not allege that this action involves Medicare patients, the Medicare non-coverage determination simply has no applicability here.  In addition, the manner in which Dr. Gomez used the devices he utilized in performing the PDs at issue does not constitute a thermal intradiscal procedure as discussed in the CMS determination, thereby rendering the Medicare non-coverage determination inapplicable for this reason as well.

[4] In *Hough*, the district court concluded, "based on the testimony of Dr. Wheeler specifically describing the testing of the technique employed by examiners performing

unnecessary by the Florida Department of Health or any other such organization or licensing

board, *see* Fla. Dep't Health R. 64B-3.006.[5]

Likewise, the exclusion of accident patients as test subjects in the particular studies cited

by State Farm does not, and cannot, support the proposition that those procedures should not be

performed on accident patients.  It is mere conjecture to claim that a category of patients are not

candidates for a procedure simply because they have been excluded as test subjects in certain

---

discograms, the articles published on discograms, the results of studies finding low false-positive
rates, and the general acceptance of discogram by two national organizations, . . . that Plaintiff is
able to proffer Dr. Wheeler's testimony regarding the performance of the discogram."  2007 WL
1500181, at *4.

[5] Section 64B-3.006 provides,

    For the purposes of Section 627.736(5)(b)2., F.S., the Department of
Health, in consultation with the appropriate licensing boards, adopts the following
list of diagnostic tests, when not used during a surgical procedure, based on the
lack of demonstrated medical value and level of general acceptance by the
provider community:

    (1) Spinal ultrasound, also known as sonography, ultrasonography, and
echography, is deemed not to be medically necessary for use in the diagnosis and
treatment of persons sustaining bodily injury covered by personal injury
protection benefits.

    (2) Somatosensory Evoked Potential is deemed not to be medically
necessary for use in the diagnosis of radiculopathy or distal nerve entrapment
when treating persons sustaining bodily injury covered by personal injury
protection benefits.

    (3) Dermatomal Evoked Potential is deemed not to be medically necessary
for use in the diagnosis and treatment of persons sustaining bodily injury covered
by personal injury protection benefits.").

Fla. Dep't Health R. 64B-3.006.  This section was the result of the statutory mandate in section
627.736(5)(b)(2) that "[t]he Department of Health, in consultation with the appropriate
professional licensing boards, adopt, by rule, a list of diagnostic tests deemed not to be medically
necessary for use in the treatment of persons sustaining bodily injury covered by personal injury
protection benefits."  Fla. Stat. § 627.736(5)(b)(2).

studies regarding that procedure.  And, of course, the fact that accident patients were excluded as test subjects in those studies actually establishes why those very studies should not be used to demonstrate that the procedures have no efficacy in the accident injury context, though that is precisely what State Farm seeks to do in its amended complaint.

As for State Farm's allegations that the discograms were unreliable because certain "protocols" it identified were not followed, State Farm does not allege (nor can it) that the so-called protocols are standards of care or medical requirements that must be followed in performing the discograms or that Gomez or any of the defendants violated any specific duty to their patients with respect to the performance of those diagnostic tests.[6]  Even assuming that State Farm had alleged that these "protocols" were standards of care, State Farm does not allege that Dr. Gomez authorized anyone to perform the discograms in a manner inconsistent with those "protocols," that Dr. Gomez had knowledge that they were not being followed, or, most importantly, that any misrepresentations were ever made to State Farm about the manner in which the discograms were performed.  Nor has State Farm alleged that the discogram results provided the sole basis for Dr. Gomez's decision to perform the PDs.

_____

[6] The criteria cited by State Farm appears to be based largely upon guidelines developed by the International Spine Intervention Society (ISIS).  As ISIS itself acknowledges, those guidelines are, however, "merely advisory guidelines, not medical requirements.  They are not 'standards of care', and deviation from the Guidelines does not necessarily constitute a breach of patient care or substandard care.  The Guidelines serve as a benchmark for delivery of quality spinal care but are not exclusionary to other approaches."  Algos Research, available at www.algosresearch.org/Education/ISISGuidelines/ AbridgedGuidelines.html (last visited Feb. 13, 2011).  What is more, according to a survey and study of 500 ISIS members, which was recently published in the August 2010 issue of the *Journal of Spinal Disorders & Techniques*, ISIS's own members do not even follow its guidelines.  Specifically, the authors found that "[d]iscography appears to be performed by several different specialties with specialty variability in technique.  ***The overall compliance with ISIS guidelines is fair to poor*** with the specialty rank order of compliance greatest to least as follows: anesthesiology, physical medicine/rehabilitation, and radiology."

Finally, State Farm's attempt to support its fraud theory through the use of purported statistics is wholly unavailing as, among other things, State Farm fails to provide any context for those figures.  For example, while State Farm alleges that the defendants performed PDs on 1,550 patients from 2005 to 2008, it does not allege how many patients the defendants saw during that time frame nor how many patients were not referred for such procedures.  Similarly, while State Farm alleges that the number of PDs performed represented almost thirty percent of all PDs performed at every ambulatory surgery facility in Florida during that period, it fails to allege how many such facilities exist in Florida or how many individuals in the State are trained and qualified to perform such procedures.  Without the proper context, these figures simply have no meaning and certainly cannot support an inference that these procedures are not medically necessary.

As is apparent from the discussion above, State Farm's bare and conclusory allegations in this case will only result in a protracted and expensive medical debate over whether certain procedures should be performed on accident patients and the manner in which they should be performed – an exercise that is better left to health departments, medical professionals, and various professional licensing boards than the litigants in federal RICO actions.  Indeed, this is not a case where State Farm alleges that the procedures were not performed or that they were not performed by licensed and qualified physicians.  Rather, it is merely a case where State Farm would like to substitute its medical judgments – conclusory and unsupported as they are – for the medical judgments exercised years ago by licensed and highly qualified physicians simply so that it can shift the burden of its financial obligations to its insured onto third parties.  This it should not be permitted to do.

For this and other reasons set forth herein, State Farm's amended complaint should be dismissed.

## BACKGROUND

On February 22, 2011, State Farm filed its amended complaint in this action. *See* Am. Compl. (D.E. 19). The amended complaint purports to assert six causes of action. The first count seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that defendants are not entitled to collect any charge for any discogram or PD that has not yet been paid and that any letters of protection the defendants possess seeking recovery from State Farm based upon the provision of those procedures is void. Am. Compl., Count I (D.E. 19). State Farm's second and third counts purport to assert substantive RICO claims under 18 U.S.C. § 1962(c) and a RICO conspiracy claim under 18 U.S.C. § 1962(d). *Id.*, Counts II, III. Its fourth through sixth counts, purport to assert state law claims for common law fraud, violations of Florida's Deceptive and Unfair Trade Practices Act (FDUPTA), and unjust enrichment. *Id.*, Counts IV–VI.

As State Farm has failed to state a claim upon which relief can be granted with respect to any of those causes of action and has wholly failed to plead fraud with any specificity, its amended complaint should be dismissed.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required under that Rule, plaintiffs must satisfy the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and later reiterated in *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009). As the Supreme Court explained,

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, __ U.S. at __, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556–57, 570); *Twombly*, 550 U.S. at 555 (providing that factual allegations must "raise a right to relief above the speculative level").

Plaintiffs, however, cannot satisfy the plausibility standard with "labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do."  *Twombly*, 550 U.S. at 555; *id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986), for the proposition that "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)); *Merritt v. Lake Jovita Homeowner's Ass'n*, No. 09-11997, 2009 WL 3437491, at *1 (11th Cir. Oct. 27, 2009) ("A district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" (internal quotation marks omitted).).  As such, in considering a motion to dismiss, this Court should first eliminate any allegations in the complaint that are merely legal conclusions.  *See Iqbal*, __ U.S. at __, 129 S. Ct. at 1950.  Only then should this Court proceed to consider whether the remaining factual allegations "plausibly give rise to an entitlement to relief," keeping in mind that it "may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (alteration in original) (internal quotation marks omitted); *see also Iqbal*, __

8

U.S. __, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 567.  Where plaintiffs fail to nudge[ ] their claims across the line from conceivable to plausible, their complaint should be dismissed." *Twombly*, 550 U.S. at 570.

Furthermore, plaintiffs pleading fraud-based claims, including RICO claims based upon the predicate act of mail fraud, must not only satisfy the plausibility standard of *Twombly* and *Iqbal*, but must also satisfy the heightened pleading requirement in Rule 9(b), which requires that plaintiffs state with particularity the circumstances constituting fraud or mistake.  *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.").  In particular, plaintiffs are required to allege the following:  "(1) the precise statement, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud."  *Id.* at 1316–17.

In so doing, plaintiffs must offer more than mere conjecture, and, where multiple defendants are involved, plaintiffs are not permitted to lump the defendants together, but must instead "inform each defendant of the nature of his alleged participation in the fraud."  *Ambrosia Coal & Constr. Co.*, 482 F.3d at 1317 (internal quotation marks omitted); *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, No. 07-13421, 2008 WL 2845215, at *4 (11th Cir. July 24, 2008).

## I.    STATE FARM'S RICO AND STATE LAW CLAIMS ARE BASED UPON CONCLUSORY ALLEGATIONS AND MERE CONJECTURE AND, THUS, COME NOWHERE CLOSE TO MEETING THE *TWOMBLY* PLAUSIBILITY STANDARD

In its amended complaint, State Farm purports to assert several causes of action, including substantive RICO claims, a RICO conspiracy, and state law fraud claims, against

Gomez and the other defendants based upon its theory that the defendants were engaged in a scheme to defraud by submitting personal injury claims based upon "medically unnecessary" discograms and PDs. State Farm's complaint, however, amounts to nothing more than conclusory allegations totally lacking in factual support, formulaic recitations of the elements of the claims, and conjecture. It, therefore, should be dismissed.

While State Farm recites the elements of the relevant causes of action, it provides no factual allegations to support those elements. After disregarding those formulaic recitations of the elements and the mere conclusory allegations in the amended complaint as *Twombly* and *Iqbal* instruct, what is left is a complaint that alleges nothing more against Dr. Gomez than that (1) he formed the Palm Beach Lakes Surgery Center in 2004 with others; (2) he performed PDs on accident patients; (3) he performed those PDs based upon discograms performed by Dr. Bistline; (4) he billed for the PDs through Heldo Gomez, M.D., P.A., and North Palm Neurosurgery, P.L.; and (5) attorneys representing his patients submitted demand letters to State Farm or its insureds, seeking payment for, among other things, those procedures. These bare allegations do not, and cannot, render State Farm's claims against Gomez plausible and, thus, those claims should be dismissed.

For example, a substantive RICO claim under § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "In order to participate, directly or indirectly, in the conduct of such enterprise's affairs, one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 180 (1993) (internal quotation marks omitted); *id.* ("The 'operation or management' test expresses this requirement in a formulation that is easy to apply."). While

State Farm recites the element in its complaint by alleging that "[e]ach defendant has knowingly conducted and/or participated, directly or indirectly, in the conduct of the Fraudulent PD Enterprise's affairs through a pattern of racketeering activity," Am. Compl. ¶ 146 (D.E. 19), it provides no factual allegations demonstrating that Gomez had any role in directing the affairs of that enterprise.  In fact, other than alleging that Dr. Gomez performed PDs and billed for those PDs, which, standing alone, is not enough, there is nothing in the complaint showing that Gomez had any role in the purported enterprise whatsoever.

Another element of a RICO claim predicated upon mail fraud is scienter, which must also be supported by factual, and not just conclusory, allegations.  *See Rep. of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) ("A RICO plaintiff's allegations of scienter cannot be merely conclusory and unsupported by any factual allegations" (internal quotation marks omitted).).  State Farm, however, alleges only that Gomez and the other defendants acted "knowingly" and with "a common purpose," without providing any factual allegations from which an inference can be drawn that Gomez had a specific intent to defraud State Farm.  This is simply insufficient.

Likewise, State Farm wholly fails to provide any factual allegations supporting the agreement necessary to support a RICO conspiracy.  *BCCI Holdings (Luxembourg) S.A.*, 119 F.3d at 950 (providing that the agreement element of a conspiracy can be satisfied "(1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts"); *O'Malley v. O'Neill*, 887 F.2d 1557, 1559 (11th Cir. 1989) (affirming the dismissal of a RICO conspiracy claim where there were "no facts alleged that would indicate that [the defendants] were willing participants in a conspiracy").  Stated another way, State Farm alleges no fact in the amended complaint that would allow this

Court to infer either an agreement to engage in the scheme to defraud or an agreement to commit two predicate acts of mail fraud.

In fact, the only factual allegation in the amended complaint even indicating any connection between Gomez and the other defendants is the allegation that Dr. Gomez, along with others, formed the Palm Beach Lakes Surgery Center" in 2004.  Am. Compl. ¶ 91 (D.E. 19).  The mere formation of a surgery center, however, does not establish any agreement to participate in a scheme to defraud and cannot support an inference of any such agreement.  *See In re Managed Care Litig.*, No. 00-1334-MD, 2009 WL 812257, at *6 (S.D. Fla. Mar. 26, 2009) ("Association, alone, with the enterprise is, of course, insufficient for violation of RICO:  an individual must *agree* to participate in the affairs of the enterprise" (emphasis in original) (internal quotation marks omitted).); *Davidson v. Wilson*, 763 F. Supp. 1470, 1472 n.3 (D. Minn. 1991) ("It is not enough to merely show that defendants were affiliated.").  And, State Farm's formulaic recitation of this element – alleging that "[t]he defendants have willfully combined, conspired and agreed to violate" § 1962(c), *see* Am. Compl. ¶ 51 – cannot cure that deficiency.  *See Am. Dental Assoc.*, 605 F.3d at 1294 ("These are the kinds of formulaic recitations of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient" (internal quotation marks omitted).).

Nor can the purported parallel conduct support the inference of an agreement.  As the Supreme Court explained in *Twombly*,

> It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.

550 U.S. at 556–57.  In other words, without further allegations supporting a meeting of the minds, "an account of a defendant's commercial efforts stays in neutral territory."  *Id.* at 557

("An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief'" (alternation in original).).  This is especially true where, as here, there is an "obvious alternative explanation" for the defendants' alleged actions that suggests lawful, independent conduct.  *Id.* at 567.

Accordingly, State Farm's amended complaint should be dismissed.

## II.   STATE FARM HAS WHOLLY FAILED TO PLEAD ITS FRAUD-BASED CLAIMS WITH THE REQUISITE LEVEL OF SPECIFICITY

Even if this Court finds that the plausibility standard is satisfied in this case (which it should not), State Farm's complaint improperly lumps the defendants together throughout and is devoid of any specific allegations with respect to Gomez.  The amended complaint should, therefore, be dismissed for this reason as well.  *See Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.*, 256 F.R.D. 49, 61 (D. Conn. 2008) ("Although the Amended Complaint is extremely long, the Court can find no allegations of fact on which a conclusion of fraud, fraudulence, falsity, or misrepresentation could be based.  It contains only conclusory allegations in lieu of the kinds of specific allegations necessary to survive Rule 9(b)."); *see also Ambrosia Coal & Constr. Co.*, 482 F.3d at 1317 (holding that the plaintiff "failed to plead its civil RICO claims against each defendant with the required level of specificity"); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) (noting that the dismissal of a complaint would also have been warranted because the defendants were lumped together and there were no specific allegations with respect to each defendant); *Merritt*, 2009 WL 3437491, at *2.

In particular, the amended complaint contains very few allegations specifically addressed to Dr. Gomez other than its conclusory allegation that "the defendants" misrepresented that the

procedures were "medically necessary."  *See Johns Manville, Inc.*, 2008 WL 2845215, at *3 ("Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent."), Further, State Farm has failed to allege even one instance wherein Dr. Gomez made such a representation, let alone the circumstances surrounding such misrepresentation like time or place.

While State Farm appears to rely upon the attorney demand letters identified in Exhibit A to the amended complaint as supporting its misrepresentation claims, those demand letters were not written by Dr. Gomez (or any of the other defendants for that matter).  Nor do those demand letters contain the purported misrepresentation that the procedures were "medically necessary," as reflected in the sample demand letter State Farm attaches to its amended complaint as Exhibit I.  In fact, nowhere in that demand letter does the phrase "medically necessary" even appear, and State Farm itself points to no specific purported misrepresentation in that sample letter.  Rather, the demand letter simply recounts the medical treatment received by the patient and includes copies of the patient's medical records and bills, though State Farm conveniently chose not to include the patient files that formed the exhibits to that demand letter as part of its exhibit.  Thus, the only representation regarding the medical treatment that can possibly be gleaned from the sample demand letter is that the services discussed were rendered – nothing more.

Furthermore, State Farm has not alleged how it was deceived by any misrepresentations nor can it do so.  Indeed, State Farm's own allegations demonstrate that it could not have been deceived by any supposed misrepresentations by Gomez or the other defendants.

As State Farm's own exhibits make plain, the patients' medical records were submitted as part of the attorney demand letters.  Am. Compl., Ex. I (D.E.).  Having received all of the medical records, which included the records relating to the discograms and PDs at issue at the time of the supposed misrepresentations, State Farm cannot now be heard to complain about any

purported misrepresentations about those procedures or the coding used to describe them. State Farm simply could not have been deceived by any purported misrepresentations regarding those procedures. And, of course, the fact that the demand letters provided the medical records relating to the procedures at issue, takes those mailings out of the scope of the mail fraud statute. *See In re Managed Care Litig.*, 2009 WL 812257, at *9 (Mailings fall outside the scope of the mail fraud statute because they do not act in furtherance of the illegal scheme where they "(1) serve to put the defrauded party on notice regarding the fraud; (2) make the execution of the fraud less likely; (3) oppose the scheme; or (4) disclose the nature of the fraud.").

What is more, State Farm's own allegations also establish that the requisite intent for fraud does not exist in this case. If, as State Farm alleges, the discograms and PDs should never have been performed on this category of patients, the defendants certainly would have known that they could not deceive State Farm merely by performing such procedures on those patients and representing that they were medically necessary. In other words, State Farm cannot have it both ways: it cannot claim that these procedures are inherently unreliable and should not be performed on accident patients and, at same time, claim that the defendants had the requisite intent to deceive by misrepresenting that those procedures were medically necessary for accident patients when it should have known that State Farm could not be deceived by such a representation given that medical conclusion. Such allegations, thus, cannot satisfy the element of intent. *See Norton v. United States*, 92 F.2d 753, 755 (9th Cir. 1937) ("There can be no intent to deceive where it is known to the party making the representations that no deception can result"); *see also United States v. Pendergraft*, 297 F.3d 1198, 1209 (11th Cir. 2002) ("If they knew that they could not deceive Marion County, then they could not have had an intent to deceive. Since there was no intent to deceive, there was no "scheme to defraud," and we hold

that Pendergraft and Spielvogel's mailing of litigation documents, even perjurious ones, did not violate the mail-fraud statute.  The allegations in the indictment for conspiracy to commit mail fraud and for the substantive offense . . .  therefore fail to charge offenses as a matter of law.").

Accordingly, the amended complaint should be dismissed.

## III.   STATE FARM'S RICO CLAIMS ALSO FAIL BECAUSE IT CANNOT ESTABLISH THE REQUISITE ELEMENT OF PROXIMATE CAUSE

Section 1964(c) of the federal RICO statute provides that "any person injured in his business or property by reason of a violation of [the RICO statute] may sue."  *Halpin v. Crist*, No. 10-10339, 2010 WL 5078222, at *1 (11th Cir. Dec. 14, 2010) (alteration in original).  Not all persons who suffer an injury by reason of a RICO violation, however, can recover under that statute.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 266 (1992).  Rather, only where the alleged violation led directly to the plaintiff's injuries, can he recover.  *Id.* at 269.

In *Holmes*, the Supreme Court set forth the reasons for this directness requirement as follows:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Id.* (citations omitted).

The amended complaint alleges that Dr. Gomez performed medically unnecessary spinal surgeries on his patients in order to defraud State Farm.  While State Farm may have alleged that it was the target of that supposed fraudulent conduct, that allegation, standing alone, is

insufficient to establish proximate cause. *See Hemi Group, LLC v. City of New York*, __ U.S. __, 130 S. Ct. 983, 991 (2010).  This is particularly true, where, as here, State Farm cannot allege that it was directly injured as it was the patients who were purportedly subjected to painful and risky spinal surgeries that never should have been performed, and not State Farm, who were the immediate victims of the supposed fraud.  Permitting State Farm to sue under RICO would necessarily result in there being two classes of persons who could sue – the directly injured plaintiffs and the indirectly injured insurance companies – and, thus, the risk of double recovery would be palpable.

Further, it would be difficult, if not impossible, in these circumstances to ascertain what amount of State Farm's purported damages were attributable to the supposed fraud (that is, the purported misrepresentations that the procedures were medically necessary).  The alleged payments by State Farm to the tort victims encompassed a number of elements, including the victim's damages to their property, pain and suffering, and costs for other medical procedures as reflected in Exhibit I.  In addition, there can be many factors wholly independent of the purported fraud that lead to the conclusion of each matter – whether it be by settlement or verdict.  And, of course, the need to grapple with these various issues is not justified where, as here, the directly injured parties – the patients purportedly subjected to painful and invasive spinal surgery – can be counted on – if not expected to –  vindicate their rights.

As such, a finding of no proximate cause in this case is fully supported by the motivating principles behind the directness requirement of the proximate cause standard, and, given that the patients are the immediate victims of the purported fraud and the remoteness of State Farm's injury, this Court should decline to find that proximate cause exists in this matter.

## IV.   FLORIDA'S LITIGATION PRIVILEGE BARS STATE FARM'S TORT CLAIMS

All of State Farm's tort claims are barred by Florida litigation privilege.  The litigation privilege provides legal immunity for actions that occur "during the course of the judicial proceedings or as necessarily preliminary thereto." *Ange v. State*, 123 So. 916, 917 (Fla. 1929); *see also Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004) ("Where, as here, the conduct in question is inherently related to, and occurs during an ongoing judicial proceeding, under Florida law, that conduct must be protected so that participants in a lawsuit are unhindered in exercising their judgment as to the best way to prosecute or defend the lawsuit."). It applies equally to common law causes of action, statutory actions, and others.  *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007).

Here, State Farm's claims are predicated upon the mailing of demand letters by attorneys as set forth in the chart attached as Exhibit A to the amended complaint.  As such, the litigation privilege acts as a bar to those claims.

## V.   STATE FARM'S FDUPTA CLAIMS FAIL AS A MATTER OF LAW AS FDUPTA DOES NOT APPLY

State Farm's FDUPTA claims also fail as a matter of law as those claims are expressly excluded from the reach of that statute.  In particular, section 501.212 provides,

> This part does not apply to . . . (4) Any person or activity regulated under laws administered by:  (a) The Office of Insurance Regulation of the Financial Services Commission;  . . . or (d) Any person or activity regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services.

Fla. Stat. § 501.212(4)(a), (d).   As State Farm's activities are regulated under the laws administered by the Office of Insurance Regulation, its FDUPTA claim, which necessarily involve its actions in paying out claims to the tort victims of insured, are covered by that

exclusionary provision.  *See Direct Gen. Ins. Co. v. Ken Cazeau, D.C.*, No. 08-048385, (Fla. 17th Jud. Cir. June 15, 2010) (holding, as a matter of law, that the defendants were entitled to partial summary judgment on the plaintiff insurance company's FDUPTA claim "as such a claim is excluded as set forth under section 501.212(4)(a) and (d), Florida Statutes.").

## VI.    STATE FARM IS NOT ENTITLED TO A DECLARATORY JUDGMENT UNDER THE FACTS OF THIS CASE

State Farm's declaratory judgment claim fails for the reasons its other claims fail as set forth in detail above.  Even if this claim did not fail for those reasons, however, State Farm is not entitled to the declaratory relief it seeks in this action.

In particular, State Farm asks this Court to determine that any outstanding claims for discograms and PDs are in essence void, without State Farm having to prove that any such submission of those claims is fraudulent.  Thus, the declaratory relief sought would be based upon the mere presumption that if State Farm proves a past fraud among these defendants, all future conduct by these defendants is somehow fraudulent.  State Farm's claim, however, wholly ignores the fact that, per its own allegations, Dr. Gomez has not even had an interest in Palm Beach Lakes Surgery Center since 2008, *see* Am. Compl. ¶ 13, and that the last surgery attributable to Dr. Gomez on Exhibit A was performed in September of 2007 – well over three years ago.[7]

What is more, in granting such declaratory relief, this Court would, in essence, be making a medical judgment on behalf of countless tort victims with respect to the procedures available to them by foreclosing their ability to obtain potentially helpful medical treatment – a judgment that

---

[7]   Indeed, these facts provide further support for the dismissal of State Farm's claims based upon the applicable statutes of limitations, as addressed more fully in the memoranda of other defendants.

the Florida Department of Health in conjunction with various licensing boards refused to make. *See* Fla. Dep't Health R. 64B-3.006.

Finally, such a judgment would amount to nothing more than "an advisory opinion at the instance of [a party] who show[s] merely the *possibility* of legal injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, [and] rest in the future." *LaBella v. Food Fair, Inc.,* 406 So. 2d 1216, 1217 (Fla. 3d DCA 1981) (emphasis and third alteration in original) (internal quotation marks omitted).

## CONCLUSION

For all the foregoing reasons, the amended complaint in this matter should be dismissed.

Respectfully submitted,

s/William L. Richey_____
William L. Richey (Florida Bar No. 0197013)
Attorney E-mail Address:  wlr@richeylaw.com
Catherine Shannon Christie (Florida Bar No. 524859)
Attorney-E-mail Address:  csc@richeylaw.com
William L. Richey, P.A.
2 South Biscayne Boulevard, 34th Floor
Miami, Florida 33131
Telephone:  (305) 372-8808
Facsimile:  (305) 372-3669
Attorneys for Defendants Heldo Gomez, M.D., Heldo Gomez, M.D., P.A., and North Palm Neurosurgery, P.L.

**Certificate of Service**

I HEREBY CERTIFY that on March 14, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/William L. Richey_____
William L. Richey (Florida Bar No. 0197013)
Attorney E-mail Address:  wlr@richeylaw.com
Catherine Shannon Christie (Florida Bar No. 524859)
Attorney-E-mail Address:  csc@richeylaw.com
William L. Richey, P.A.
2 South Biscayne Boulevard, 34th Floor
Miami, Florida 33131
Telephone:  (305) 372-8808
Facsimile:  (305) 372-3669
Attorneys for Defendants Heldo Gomez, M.D., Heldo Gomez, M.D., P.A., and North Palm Neurosurgery, P.L.

**SERVICE LIST**

*State Farm Mutual Automobile Insurance Co. et al. v. Jeffrey Kugler, M.D. et al.*

**Case No. 11-80051-CIV-HURLEY/HOPKINS**

**United States District Court, Southern District of Florida**

David I. Spector, Esq. (Fla. Bar No.:086540)
Attorney E-mail Address:
david.spector@akerman.com
Scott W. Atherton (Fla. Bar No. 0749591
Attorney E-mail Address:
scott.atherton@akerman.com
Akerman Senterfitt
222 Lakeview Avenue, Suite 400
West Palm Beach, Florida 33401
Telephone:  (561) 653-5000
Facsimile:  (561) 659-6313
Attorneys for Plaintiffs
[Via Notice of Electronic Filing]

Robert W. Wilkins, Esq. (Fla. Bar
No.:578721)
Attorney E-mail Address:
rwilkins@jones-foster.com
Cristopher Stephen Rapp, Esq. (Fla Bar
No.: 863211)
Attorney E-mail Address:
csrapp@jones-foster.com
Jones, Foster, Johnston & Stubbs, P.A.
505 South Flagler Drive
Suite 1100
West Palm Beach, Florida 33401
Telephone:  (561) 659-3000
Facsimile:  (561) 650-0412
Attorneys for Defendants Jeffrey Kugler,
M.D. and Jeffrey L. Kugler, M.D., P.A.
a/k/a National Orthopedics and
Neurosurgery, P.A.
[Via Notice of Electronic Filing]

Ross O. Silverman, Esq. (pro hac vice to be filed)
Attorney E-mail Address:
ross.silverman@kattenlaw.com
Charles Chejfec, Esq. (pro hace vice to be filed)
Attorney E-mail Address:
charles.chejfec@kattenlaw.com
Jon W. Reale, Esq. (pro hac vice to be filed)
Attorney-E-mail Address:
john.reale@kattenlaw.com
Emily J. Prentice (pro hac vice to be filed)
Attorney E-mail Address:
emily.prentice@kattenlaw.com
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone:  (312) 902-5200
Facsimile:  (312) 902-1061
Attorneys for Plaintiffs
[Via Notice of Electronic Filing]

Anthony Conrad Vitale, Esq. (Fla. Bar No.:
249841)
Attorney E-mail address:
avitale@vitalehealthlaw.com
The Health Law Office of Anthony C.
Vitale, P.A.
2333 Brickell Ave., Suite A-1
Miami, Florida 33129
Telephone: (305) 358-4500
Facsimile: (305) 358-5113
Attorney for Defendants Jane Bistline,
M.D. and Jane E. Bistline, M.D., P.A.
[Via Notice of Electronic Filing]

Robert N. Nicholson, Esq. (Fla. Bar No.: 933996)
Attorney E-mail address:
robert@nicholsonlawgroup.com
Nicholson Law Group
200 s. Andrews Ave., Suite 100
Fort Lauderdale, FL 33301
Telephone: (954) 351-7474
Facsimile: (954) 351-7475
Attorney for Defendants 2047 Palm Beach Lakes
Partners, LLC a/k/a Palm Beach Lakes Surgery
Center and Jonathan Cutler, M.D.
[Via Notice of Electronic Filing]

Bruce David Green, Esq. (Fla. Bar No.: 262048)
Attorney E-mail address:
bgreen@bdgreenpa.com
Bruce D. Green, P.A.
1313 S. Andrews Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 522-8554
Facsimile: (954) 522-8555
Attorney for Defendants Gary Carroll,
Mark Izydore, and Palm Beach Practice
Management, Inc.
[Via Notice of Electronic Filing]