UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 11-80051-CIV-HURLEY/HOPKINS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE FARM
FIRE & CASUALTY COMPANY,

    Plaintiffs,

vs.

JEFFERY KUGLER, M.D, JANE BISTLINE, M.D.,
and HELDO GOMEZ, M.D.,

JEFFREY L. KUGLER, M.D., P.A. n/k/a
NATIONAL ORTHOPEDICS AND NEUROSURGERY, P.A.,
JANE E. BISTLINE, M.D., P.A., HELDO GOMEZ, M.D., P.A.,
and NORTH PALM NEUROSURGERY, P.L.,

2047 PALM BEACH LAKES PARTNERS, LLC,
a/k/a Palm Beach Lakes Surgery Center,

GARY CARROLL, MARK IZYDORE, and PALM
BEACH PRACTICE MANAGEMENT, INC., and

JONATHAN CUTLER, M.D.,

    Defendants.

_____/

**DEFENDANTS' KUGLER AND NATIONAL ORTHOPEDICS SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

                Robert W. Wilkins, Esquire
                Florida Bar No. 578721
                JONES, FOSTER, JOHNSTON & STUBBS, P.A.
                *Attorneys for Defendants Kugler and National Orthopedics*
                505 South Flagler Drive, Suite 1100
                West Palm Beach, FL 33401
                Telephone:  561-650-0400
                Facsimile: 561-650-0412
                Email:  rwilkins@jones-foster.com

## ARGUMENT

The Eleventh Circuit Court of Appeals decision in *Ironworkers Local Union 68 et al v Astrazeneca Pharmaceuticals, LP et al*, No. 08-16851, 2011 WL 833222 (March 11, 2011) squarely held that an insurer cannot plausibly allege an economic injury as a result of paying for "medically unnecessary" prescriptions issued to its insureds pursuant to a fraudulent scheme directed at the insurers, unless the insurer alleges facts to suggest plausibly that they established their premiums in a way inconsistent with the "insurance industry's conventional ratemaking procedures." Absent such allegations, the court must infer the premiums were charged in the conventional manner—which includes the fact that premiums are derived (or adjusted) by "taking into account all know risks that might cause the insurers to pay for medically unnecessary or inappropriate prescriptions." And, "[o]ne such risk is fraud within the health care industry." The standard established in *Astrazeneca* is fatal to Plaintiffs RICO and state law claims. Plaintiffs have not, and cannot, allege that their premiums do not follow conventional ratemaking procedures that take into account the risks of litigating issues such as the reasonableness and necessity of medical procedures performed on the injured victim, including the potential for fraud within the health care industry.

*Astrazeneca* involved a direct action by "insurers" [1] against the manufacturer (and related entities) of the drug Seroquel for engaging in an "illegal marketing campaign" that falsely represented the safety and effectiveness of Seroquel for "off-label" uses, resulting in "medically unnecessary" prescriptions. The insurers claimed they were directly targeted by the scheme and damaged because "AstraZeneca's fraud caused them 'to unnecessarily pay for [the more expensive] Seroquel off-label prescriptions." The insurers sued seeking treble damages under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c) and (d), as well as for unjust enrichment, common law fraud and under consumer protection statutes. *Id.,* at *1.

The district court had combined all of the cases by way of a Consolidated Amended Complaint, and granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failing to "adequately plead that AstraZeneca's false representations proximately

---

[1] The named plaintiffs represent a nation-wide class of third-party insurers combined in a multi-district litigation assigned to the Middle District of Florida.

caused the plaintiffs' purported economic losses." *Id.,* at *1, FN9. The district court concluded that the complaint did not establish a <u>direct relation</u> between the false representations and the plaintiffs' losses. The court found instead that the allegations showed that the losses could have been "caused by other, independent factors" such as the physician's independent professional judgment in prescribing Seroquel for off-label uses. Recognizing that the "highly complex damages assessment" required and the need to inquire into the specifics of the "doctor-patient relationship," the district court concluded there was no direct injury as required by RICO and dismissed the state law claims on proximate causation grounds. *Id.*, at *2.

The Eleventh Circuit reviewed <u>de novo</u> the district court's order and, acknowledging the requirement that the complaint must state a claim that is "<u>plausible on its face</u>," affirmed the district court on other grounds.  Specifically, the Eleventh Circuit held that ""economic injury is a necessary element of all of the plaintiffs' claims" and that the insurers failed to plead a plausible economic injury:

> "The insurers have plead no facts in the complaint that suggest the insurers established premiums in a way inconsistent with the insurance industry's conventional ratemaking procedures. We therefore must infer that the insurers do charge premiums established in that conventional manner.  As a consequence, because the insurers consciously chose to assume the risk of paying for all medically unnecessary or inappropriate prescriptions of formulary-listed drugs-like Seroquel-we must further infer that they adjusted their premiums upward to reflect the projected value of claims for these prescriptions. Such estimates, when calculated properly, take into account all known risks that might cause the insurers to pay for medically unnecessary or inappropriate prescriptions.
>
> On such risk is fraud within the health care industry. Fraud is a well-known contributor to increased costs for health care services. (citations omitted). Thus the risk that fraud— including fraudulent marketing by drug manufacturers—might result in insurers paying for medically unnecessary or inappropriate prescriptions is just another cost to be factored into premiums.

*Id.*, at *9.

On our facts, the Amended Complaint alleges only a conclusion-- that "State Farm has been injured in its business and property by reason of the above described conduct in that it has paid more than $13 million based upon the fraudulent charges"—without any supporting facts. (AC, ¶ 147).  State Farm has not alleged that its underwriting of automobile insurance in the State of Florida does not take into account known risks involved in litigating whether a particular

2

medical procedure was reasonable and necessary (from the injured victim's perspective) when State Farm considers the procedure is "medically unnecessary" or "inappropriate" under the circumstances.[2]  This deficiency in State Farm's Amended Complaint alone, under *Astrazeneca*, requires dismissal for failure to plausibly allege an economic injury.

It is important to note that the Eleventh Circuit in *Astrazeneca* did not distinguish or otherwise challenge the legal basis by which the Second Circuit and numerous district courts have dismissed "off-label" drug promotion cases because "independent decisions of the physicians and other intermediaries…eviscerates the chain of causation necessary to demonstrate a RICO violation." *Id.,* at 35 (Martin, J. concurring)(which also requires dismissal here).[3] Instead, the court cited with approval the Seventh Circuit decision *Int'l Bhd. Of Teamsters Local 734 Health & Welfare Fund v Phillip Morris, Inc.*, 196 F.3d 818, 823 (7th Cir. 1999)("declaring that similar insurers '[h]aving collected extra money from [insured] smokers' based on premiums assessed by 'actuaries whose life work is making accurate estimates of the costs of smoking…and enabling the insurer to collect these in advance from insured,' cannot also recover that extra cost from tobacco manufacturers"). *Id*., at *9.

The Eleventh Circuit squarely addressed the issue of whether an insurer could plausibly allege economic injury for costs incurred to pay for medically unnecessary prescriptions in a direct action against the party allegedly responsible for the issuance of the medically unnecessary prescriptions. In addressing this issue, the Eleventh Circuit carefully examined how conventional insurance companies operate.

The Court recognized that insurance is a contractual bargain in which there is a "contractual transfer of risk from the insured party to a financing entity, the insurer, in consideration for premium." *Id.*, at *7.  "Typically, insurers adjust premiums to compensate for known risks assumed under that coverage." *Id*., at *7:

---

[2]  The *necessity* of a procedure "involves a question of necessity *from the perspective of the injured party*, rather than from the perspective of a medical expert." *Dungan v Ford¸* 632 So.2 159, 163.  (Kugler Memo, at 1)(DE 22).

[3]  The *Astrazeneca* decision does not reject the direct injury analysis of the district court or the many cases cited by the district court that have dismissed these types of claims on that basis. *See,* Kugler Memo. at 13-18 (DE 22).

3

> Because of how paramount premiums are to their profitability, insurers engage in a technical actuarial analysis to price them. Through this ratemaking process, insurers aim to 'predict future losses and future expenses and allocat[e] those costs among the various classes of insureds. Insurers predict losses on the basis of predicted claims costs. This prediction involves an assessment of (1) the likely number of times a covered event- *e.g.* a prescription of a covered drug—will occur and (2) the average cost of each covered event. If there is any uncertainty surrounding the projected claims, the insurers will raise the premium to reflect that uncertainty….

The court further recognized that "[s]uch estimates, when calculated properly, take into account all known risks that might cause the insurers to pay for medically unnecessary or inappropriate prescriptions." The risk that fraud might result in insurers paying for medically unnecessary or inappropriate procedures is just another cost to be factored into the premiums. *Id.*, at *9.

*Astrazeneca* does not stand for the proposition that the provision of medically unnecessary procedures to patients has no remedy; only that an insurer that has already collected premiums from its insured for that potential risk cannot sue a third party wrongdoer to recover the same outlay. If the insurer's actuaries do their jobs, then the premiums collected cover the risks assumed. If those actuaries do not accurately calculate the risks, the insurer may suffer a loss. Either way, by the very nature of insurance the risk (even based on fraud) is "bargained for" by the insurer, who collects money for such risks "up front" from the insured (premiums) in consideration for taking on that very risk. *Id.*, at *7. To the extent the insurers' payments for medically unnecessary or inappropriate procedures exceeds the premiums collected, the third party wrongdoer should not be held liable for the insurer's actuarial errors. Id., at *7. This is completely consistent with the Seventh Circuit's reasoning in *Phillip Morris* "that the victim of a tort is the proper plaintiff, and that insurers…may only recover to the extent their contracts subrogate them to the victim's rights." *Id.*, 196 F.3d 818, 822 (7th Cir. 1999). In fact, this approach is mandated by the direct injury requirement of *Holmes.*(Kugler Mem. at 13-18)(DE 22).

State Farm could have contractually subrogated itself to the rights of its insured, or taken an assignment of the injured victims rights against the physicians as part of its settlement of these claims. The reason why it didn't and instead chose the direct action approach—which is not a novel one—was clearly expressed by Judge Easterbrook:

4

> "[Insurers] want to recover directly from tobacco producers precisely in order to bypass the elements of subrogation actions—principally, that the insurer demonstrate the existence of a tort and the lack of any defenses to liability. By suing directly, plaintiffs seek to recover even if none of their beneficiaries could prevail in tort litigation. Three appellate decisions disapprove this maneuver and hold that insurers may recover only to the extent that they can step into the shoes of their insureds."

*See*, *Int'l Bhd. Of Teamsters Local 734 Health & Welfare Fund v Phillip Morris, Inc.*, 196 F.3d 818, 821 (7th Cir. 1999).

Each of State Farm's common law and the FDUTPA claims also fails for the same reasons stated in *Astrazenca*, they all require an economic injury in the form of "actual damages." *Id*., at *4. Under Florida law, it is fundamental that "[a]ctual damages and the measure thereof are essential as a matter of law in establishing a claim of fraud." *Nat'l Equip. Rental, Ltd. v. Little Italy Rest. & Delicatessen, Inc*., 362 So. 2d 338, 339 (Fla. 4th DCA 1978). "Damage is of the very essence of an action for fraud or deceit." *Casey v. Welch*, 50 So. 2d 124, 125 (Fla. 1951). Without proof of actual damage the fraud is not actionable. *Id.; Stokes v. Victory Land Co*., 128 So. 408 (1930). In addition, "actual damages" is an element of a claim under the Florida Deceptive and Unfair Trade Practices Act. *See,* Fla. Stat. section 501.211(2)(2010); *Rodriguez v Recovery Performance & Marine, LLC*, 38 So.2d 178, 180 (Fla. 3d DCA 2010).

## CONCLUSION

The Amended Complaint clearly fails to meet the standard required by *Astrazeneca* and requires dismissal. Dismissal should be with prejudice based on the direction from the Eleventh Circuit that, absent allegations that the premiums were not set in accordance with the industry's conventional ratemaking procedures, the court must assume that they were, and that known risks such as whether procedures are medically necessary and even fraudulent schemes would be calculated into those premiums.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 25, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorize manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        JONES, FOSTER, JOHNSTON & STUBBS, P.A.
By:   /s/ Robert W. Wilkins
       Fla. Bar No. 578721
       rwilkins@jones-foster.com

SERVICE LIST

| | |
|---|---|
| David I. Spector<br>Scott W. Atherton<br>Akerman Senterfitt<br>222 Lakeview Avenue<br>Suite 400<br>West Palm Beach, FL 33401<br>561-653-5000<br>Fax: 561-659-6313<br>Email: david.spector@akerman.com<br>Email: scott.atherson@akerman.com<br>*Attorneys for Plaintiffs* | Anthony Conrad Vitale<br>The Health Law Office of Anthony C. Vitale, P.A.<br>2333 Brickelle Avenue<br>Suite A-1<br>Miami, FL 33129<br>305-358-4500<br>Fax: 305-358-5113<br>Email: avitale@vitalehealthlaw.com<br>*Attorneys for Jane Bistline, MD and Jane E. Bistline, M.D., P.A.* |
| Charles Chejfec<br>John W. Reale<br>Katten Muchin Rosenman LLP<br>525 West Monroe Street<br>Chicago, IL 609661-3693<br>312-902-5200<br>Fax: 312-902-1061<br>Email: Charles.chejfec@kattenlaw.com<br>Email: john.reale@kattenlaw.com<br>*Attorneys for Plaintiffs* | William Leon Richey<br>Catherine Shannon Christie<br>2 South Biscayne Boulevard<br>One Biscayne Tower – 34th Floor<br>Miami, FL 3131<br>305-372-8808<br>Fax: 305-372-3669<br>Email: wlr@richeylaw.com<br>Email: csc@richeylaw.com<br>*Attorneys for Heldo Gomez, M.D., Heldo Gomez, M.D., P.A. and N.P. Neurosurgery* |
| Robert Nicholson<br>Parker D. Eastin<br>Nicholson Law Group<br>200 S Andrews Avenue<br>Suite 100<br>Fort Lauderdale, FL 33301<br>954-351-7474<br>Fax: 954-351-7475<br>Email: Robert@nicholsonlawgroup.com<br>Email: parker@nicholsonlawgroup.com<br>*Attorneys for 2047 Palm Beach Lakes Partners, LLC and Jonathan Cutler, MD* | Bruce David Green<br>1313 S Andrews Avenue<br>Fort Lauderdale, FL 33316<br>954-522-8554<br>Fax: 954-522-8555<br>Email: bgreen@bdgreepa.com<br>*Attorneys for Gary Carroll, Mark Izydore and Palm Beach Practice Management* |