**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**CASE NO. 11-CV-80051-HURLEY/HOPKINS**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE FARM
FIRE & CASUALTY COMPANY,

Plaintiffs,

        vs.

JEFFREY KUGLER, MD, JANE BISTLINE, MD,
and HELDO GOMEZ, MD,

JEFFREY L. KUGLER, M.D., P.A. n/k/a
NATIONAL ORTHOPEDICS AND
NEUROSURGERY, P.A., JANE E. BISTLINE, M.D.,
P.A., HELDO GOMEZ, M.D., P.A., and
NORTH PALM NEUROSURGERY, P.L.

2047 PALM BEACH LAKES PARTNERS, LLC,
a/k/a Palm Beach Lakes Surgery Center,

GARY CARROLL, MARK IZYDORE, and PALM
BEACH PRACTICE MANAGEMENT, INC., and

JONATHAN CUTLER, DPM,

Defendants.

_____/

**PLAINTIFFS' MOTION TO COMPEL COMPLETE RESPONSES TO PLAINTIFFS'**
**SUBPOENA *DUCES TECUM* SERVED ON THE NON-PARTY, STEVEN L. ROBBINS, P.A.,**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire &

Casualty Company (collectively, "State Farm"), pursuant to Fed.R.Civ.P. 45, hereby move for an

Order Compelling Non-Party, Steven L. Robbins, P.A. ("Robbins"), to properly respond, and

produce all responsive documents, to State Farm's Subpoena *Duces Tecum*.  As set forth more

fully below, State Farm's Subpoena *Duces Tecum* to Robbins seeks documents and information

related to the claims and defenses at issue in this action that are clearly calculated to lead to the discovery of admissible evidence. Nonetheless, Robbins has propounded boilerplate and unsubstantiated objections, producing only a handful of documents and refusing to "search any further." Robbins' objections are meritless, and are consistent with a long history of contemptuous behavior to avoid discovery in judicial proceedings. Therefore, State Farm respectfully requests that this Court grant this Motion, and in support thereof states as follows:

## I.   PRELIMINARY STATEMENT

State Farm served its Subpoena *Duces Tecum* (the "Subpoena") on Robbins on October 26, 2011, a copy of which is attached as Exhibit "A." Those requests sought basic, yet highly relevant, information directly related to the business and financial relationships between the Defendants, the ways in which fraud scheme profits were distributed, and affirmative acts taken by the Defendants to conceal their fraud scheme by, among other things, making false representations to various courts to thwart discovery regarding their activities. In total, there were only six requested categories of documents served upon Robbins.

Robbins served its response (the "Response") to State Farm's Subpoena on November 28, 2011, a copy of which is attached as Exhibit "B." In that Response, Robbins raised boilerplate objections in response to virtually every request, claiming that the documents sought are duplicative, redundant, cumulative, overly broad, unduly burdensome, and "of no material point given the wholly collateral and irrelevant nature of the inquiry." *See, e.g.,* Ex. B, p. 2. These unsupported boilerplate objections are improper and without merit. For the reasons more fully stated below, State Farm respectfully requests that the Court enter an Order compelling Robbins to provide full and complete responses to State Farm's discovery requests, provide an affidavit

confirming that its production is complete, and pay State Farm its reasonable attorney's fees and costs incurred in the preparation and prosecution of this Motion.

## II.   BACKGROUND

As set forth more fully in the Amended Complaint (DE 19), this case involves a complex insurance fraud scheme calculated to defraud State Farm and other insurers out of tens of millions of dollars through the submission of personal injury claims based upon medically unnecessary diagnostic and surgical procedures known as provocative discograms ("discograms") and percutaneous discectomies ("PDs"), respectively, which are performed on motor vehicle accident victims.  One of the key players in this fraud scheme is Defendant Mark Izydore.  As set forth more fully in the Motion to Compel Interrogatory Answers from Izydore (DE 257), he and Defendant Gary Carroll joined forces with their co-defendants in 2004 to launch this fraud scheme, recruit doctors (such as Kugler, Bistline, and Gomez) to perform the medically unnecessary procedures, and recruit personal injury attorneys (such as Steinger and Iscoe), to present the fraudulent medical bills created by the doctors to insurance carriers (such as State Farm).  The end goal of the scheme is to obtain fraudulently inflated personal injury settlements from which all of the fraud scheme participants derived their profits.

Specifically, in January of 2004, after Kugler was recruited by Izydore and Carroll to join in this scheme, Kugler formed Jeffery L. Kugler, M.D., P.A. (n/k/a National Orthopedics) and commenced a new practice focusing primarily on treating auto accident patients with back and neck pain.  In furtherance of this new practice, Kugler entered into an "Exclusive Management Agreement" (the "Management Contract") with Carroll and Izydore's newly-created company, Palm Beach Practice Management, Inc. ("PBPM"), that provided for Carroll and Izydore (via PBPM) to manage the daily affairs of Jeffery L. Kugler, M.D., P.A.  *See* DE 19, ¶¶ 81-84;

Exhibit B thereto.  Pursuant to that Management Contract, Kugler was entitled to receive a base monthly salary of $41,666.67, and PBPM was obligated to advance any amounts necessary to meet this monthly obligation to Kugler.  *See* DE 19, ¶¶ 86-87; Exhibit B thereto.  In exchange for providing these benefits and using their best efforts to market Kugler P.A. and maximize the revenues of Kugler's practice, the Management Contract called for PBPM – and thus Carroll and Izydore – to receive 45% to 50% of the profits of the practice.

Robbins was directly involved in this scheme from the very beginning.  Robbins was the incorporator of Defendant Jeffrey L. Kugler, M.D., P.A. when it was incorporated on January 23, 2004, and submitted the formation documents to the Secretary of State on behalf of that entity. Robbins was also was the incorporator and registered agent for Defendant PBPM (the company Carroll and Izydore created for this scheme) when it was incorporated on January 28, 2004, and submitted the formation documents to the Secretary of State for that entity.  Although it appears Robbins represented both Jeffrey L. Kugler, M.D., P.A. and PBPM as far back as 2004, he actually negotiated the Management Contract on behalf of Izydore, Carroll and PBPM against Kugler and undeniably had knowledge of the arrangement since that time.  (*See* 2/18/04 Robbins E-mail String, attached as Ex. "C").

As set forth in the attached Email string evidencing Robbins' direct involvement in the Management Agreement negotiations, it is clear that (a) Kugler insisted that both Carroll and Izydore be involved in the management of his practice, (b) Kugler wanted to include a provision in the Management Agreement that would have allowed him to terminate the contract with Carroll and Izydore, and (c) Kugler appears to have been given an interest in the real estate at 3618 Lantana where Kugler's PA and PBPM would operate, which Kugler's attorney was concerned may be interpreted as a kickback.  *See id.*  As expressed by Robbins, his clients' key

concern was that Kugler be bound by the Management Contract without a right to terminate the involvement of Izydore and Carroll (through PBPM), a term which Kugler ultimately accepted. *See id.*   In other words, Robbins required Kugler to forego any ability to terminate the management role of Carroll and Izydore over his new practice.

Once Robbins created entities for Carroll, Izydore, and Kugler to utilize in this scheme and finalized the Management Agreement between those Defendants, the scheme proceeded in full force.  Robbins remained heavily involved in the operation of these scheme—so much so that ***Robbins actually moved his law office into the Palm Beach Lakes Surgery Center*** so he could service the Defendants on a full-time (or near full-time) basis.  In furtherance of the scheme, and in an improper effort to thwart discovery, Robbins and Izydore entered into an arrangement (the details of which are not yet known) in which Izydore was represented to various courts as Robbins' "paralegal" to cloak his activities with purported privileges so they could be shielded from discovery.  For example, in a bodily injury case involving a discogram performed by Dr. Bistline and a PDD performed by Dr. Kugler, Robbins filed for a protective order to avoid Izydore's deposition and had Izydore submit an affidavit stating Izydore was "not employed by any doctor, medical facility or company that provided any product, service or treatment to Plaintiff…."  (DE 19, Ex. C).  Similarly, in a dispute between Kugler and an orthopedic surgeon who previously worked for him named Dr. Rajendran Naidoo, Robbins moved for a protective order to avoid Izydore's deposition based upon an affidavit in which Izydore swore that "[a]t no time during the time that Dr. Naidoo was an employee of Jeffrey L. Kugler, MD, P.A., from January 1, 2008 through December 2009, was I an employee or agent of Jeffrey L. Kugler, MD, P.A., let alone in any communications with Dr. Naidoo."  (DE 19, Ex. D).  In that affidavit, Izydore further swore that he worked as a paralegal for attorney Steven

Robbins, and that all of Izydore's communications with Dr. Naidoo from January 1, 2008 through December 2009, "would have been under the auspices of Steven L. Robbins, Esq., as counsel for Jeffrey L. Kugler, MD, P.A…." *Id.*  Neither of those affidavits disclosed the existence of the Management Agreement (which Robbins was involved in negotiating on behalf of Carroll, Izydore, and PBPM) or Izydore's substantial personal involvement in the operation and marketing of Dr. Kugler's medical practices.  Further, Robbins has submitted sworn affidavits signed by Izydore affirming that Izydore's activities were conducted as Robbins' paralegal.

The above-described statements of Robbins and Izydore, which were made under oath, are contradicted by the express terms of the Management Contract Robbins negotiated for Izydore.  Moreover, they are contradicted by testimony under oath given by Kugler. Specifically, in a May 7, 2008 deposition in another matter, Kugler testified that Izydore was involved in the management of his practice, set up his office, and helps with accounting and budgeting.  (*See* Kugler 5/7/08 Dep. Excerpt, pp. 10-11, attached as Ex "D").  Again, in an April 23, 2008 deposition in another matter, Kugler testified that Izydore "works in a practice management company that helps oversee my practice as well as other things."  (*See* Kugler 4/23/08 Dep. Excerpt, p. 44, attached as Ex "E").   Yet again, in a January 16, 2008 deposition, Kugler testified that Izydore was presently involved in the management and marketing of his practice, and that he believed Izydore worked for the Palm Beach Lakes Surgery Center.  (*See* Kugler 1/16/08 Dep. Excerpt, pp. 41-42, attached as Ex "F").   In fact, Robbins was present and representing Kugler when he testified in that January 16, 2008 deposition.

As these depositions, and the multiple affidavits attached to the Amended Complaint, demonstrate (DE 19, ¶ 90), Robbins and Izydore actively concealed the true nature of Izydore's

involvement with the Defendants by making false statements and purposely evading legitimate discovery.  Yet another example of this misconduct occurred is set forth in the attached Motion to Show Cause and Supporting affidavits filed against Robbins and Izydore in another case.  (*See* Motion and Affidavits, attached as Exs. "G").[1]   As that Motion explains, Robbins and Izydore worked in concert to purposely evade service of a subpoena for Izydore's deposition.  When process servers attempted to serve Izydore at the PBLSC, the Defendants' employees lied to process servers and stated Izydore was not there.  Those statements were proven untrue because State Farm had set up surveillance near the back door of the PBLSC while trying to serve Izydore previously.   After the Defendants employees told the process server several times over a 20 minute period that Izydore was not at the PBLSC, Izydore emerged from the back door of the PBLSC, approached the process server's vehicle, and "**kick[ed] the front passenger door of said vehicle, denting and scratching it**."   *Id.* at p. 10 @ No. 18.

All of these acts of concealing evidence (such as submitting false sworn statements and intentionally thwarting legitimate discovery) show fraudulent intent on the part of the Defendants and other fraud scheme participants.  These facts are also highly probative of Robbins and Izydore's (lack of) credibility.  In order to discover further evidence regarding the affirmative acts of concealment that the Defendants have taken, with the assistance of Robbins, and the true extent of the relationships between Izydore, Robbins and the Defendants, State Farm served the instant Subpoena.  Like virtually all of the Defendants in this case, Robbins raised boilerplate objections, claimed not to have certain documents, and produced a mere 39 pages in response to State Farm's Subpoena.  This Motion to Compel follows.

---

[1] Certain attachments to that Motion which are not relevant here were omitted for brevity.

## III.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena and permits a party to a federal lawsuit to issue a subpoena compelling the production of documents. *See* Fed.R.Civ.P. 45(c)(2)(B)(I); *Stringer v. Ryan*, 2009 WL 3644360 (S.D. Fla. Oct. 30, 2009) ("A party to [a] federal lawsuit may issue a subpoena to a nonparty, compelling the production of documents relevant to any of the parties' claims or defenses.").  Rule 45 requires Robbins to produce all responsive documents pursuant to State Farm's Subpoena, and in fulfilling this obligation, it well-settled that Robbins' responses to State Farm's Subpoena must be:

> full, complete and unevasive. The answer[ing] party cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control . . . [i]f the answering party lacks necessary information to make a full, fair and specific answer . . . it should so state under oath and should set forth in detail the efforts made to obtain the information.

*Richard Stone v. Zimmer, Inc.,* Case No. 09-80252, D.E. 72 (requiring responding party to produce outstanding responsive documents) (*citing Molinos Valle Del Cibao v. Lama*, 2008 WL 3850807, *3 (S.D. Fla. Aug. 14, 2008)).  When it is apparent from documents produced in response to a subpoena that the responding party has not produced ***all*** documents in its possession, custody or control, a court will order complete production of responsive documents. *See e.g. Kilpatrick v. Breg, Inc.,* 2009 WL 1764829, at *3 (S.D. Fla. June 22, 2009) (granting plaintiff's motion to compel *complete* production of documents when an email produced indicated a meeting had taken place but no documents were produced memorializing such meeting); *see also Hollywood Beach Hotel Owners Ass'n. v. Cont'l. Cas. Co.,* 10-61162, D.E. 28 (S.D. Fla. 2010) (ordering non-party to produce all outstanding documents although non-party had already produced some documents responsive to the subpoena). Moreover, "when it reasonably appears that a response is incomplete the court may require certification that the

nonparty has 'conducted a search for the information reasonably available to them through their agents, attorneys, or others subject to their control and has[ ] determined that the information requested either does not exist or that it has been produced.'" *Bailey Indus., Inc. v. CLJP, Inc.,* Case No. 3:10mc64 (N.D. Fla. Sept. 30, 2010) (citation omitted).

Finally, a subpoenaed party has an obligation to engage in sufficient investigation to uncover as much information as possible, and to produce all responsive documents that are in their "control" (*i.e.,* the "legal right to obtain documents upon demand"), not simply what is in their "possession." *See Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir. 1984).  Failure to engage in a sufficient investigation of responsive documents will result in the court compelling the subpoenaed party to provide a complete and proper response.  *See e.g. Joyner v. Rex Corp.,* 2007 WL 1099106, at *4 (M.D. Fla. April 10, 2007).

## IV.   ARGUMENT

In response to State Farm's Subpoena, Robbins produced an extremely limited number of documents and refused to search for any more.  Robbins also asserted a limited number of objections which are broken down into two main parts:  1) a general "Objections" (the "General Objections") section which purports to apply to each document request made by State Farm; and 2) a specific "Responses" section which purports to both respond to the requests, as well as provide specific objections to same (the "Responses").  None of these objections have merit, and all of them should be overruled in this case for the reasons that follow.

### A.   Robbins' General Objections Are Without Merit.

#### 1.   All of Robbins' General Objections Are Boilerplate And Deficient.

Robbins raises the following boilerplate General Objections in response to State Farm's Subpoena:

(a)     Robbins asserts that the "Definitions and Instructions" are improper in some unidentified and unexplained way;

(b)     Robbins contends that the requests contained in the Subpoena are "vague, ambiguous, unintelligible, overly broad, and compound" without explaining which requests (or portions of the requests) are being challenged, or why they are being challenged; and

(b)     Robbins argues that the documents sought are irrelevant and production of them would violate Robbins right to privacy under the Florida Constitutions, Art. 1, Sec. 23 without providing any supporting particulars.

These are all classic examples of improper boilerplate objections which violate the requirements of the Federal Rules of Civil Procedure.  As one Court explained,

> [t]he party resisting discovery bears the burden of demonstrating that its objections should be sustained, and pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure. An objection to a [discovery] request must clearly set forth the specifics of the objection and how that objection relates to the [discovery] being demanded. ***The objecting party must do more than intone the familiar litany that the [discovery is] burdensome, oppressive or overly broad.*** Instead, the objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [discovery request] is not relevant or how each [discovery request] is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.

*Fin. Bus. Equip. Sol., Inc. v. Quality Data Sys.,* 2008 WL 4663277, at *5 (S.D. Fla. 2008) (overruling non-specific boilerplate objections) (emphasis added).   Such "unsubstantiated boilerplate objections … are, ironically, themselves overbroad and vague.  *[T]hese Objections [are] worthless for anything beyond delay of discovery…[and] do not constitute objections.*" *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.,* 2007 WL 4557158, 3 (S.D. Fla. 2007). (internal citations omitted) (emphasis added).

Here, Robbins failed filed to provide any support or explanation for its objections, other than conclusorily stating that some unidentified requests are supposedly "vague, ambiguous, unintelligible, overly broad, and compound."   Simply stating that a discovery request is

{22837948;8}

10

purportedly objectionable on these grounds without explaining any further renders the objection meaningless.  *See id.*  State Farm cannot reasonably respond to Robbins' objections without any intelligible explanation by Robbins.  As a result, these boilerplate objections are deficient and should be overruled by this Court.

### 2.      Robbins' General Objection Based On The Florida Constitutional Right Of Privacy Is Also Deficient.

Robbins also objects to State Farm's Subpoena on the grounds that it supposedly violates Robbins' PA's "due process rights and [attempts] to invade the privacy rights of the firm and its personnel."  Article I, sec. 23 of the Florida Constitution states that "[e]very ***natural person*** has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."  FL. CONST. Art. I, § 23 (emphasis added).  Accordingly, "even where a constitutional right to privacy is implicated, that right is a personal one, ***inuring solely to individuals***."  *Alterra Healthcare Corp. v. Estate of Shelley*, 827 So. 2d 936, 941 (Fla. 2002) (holding that an assisted living facility lacked standing to deny a discovery request by asserting the constitutionally based privacy rights of its employees) (emphasis added).  For these reasons, Florida courts have uniformly held that this constitutional right applies only individuals, not corporate entities.  *See, e.g., Fla. Ass'n of Prof'l Lobbyists, Inc. v. Division of Legislative Servs.*, 2006 WL 3826985, at *4 (N.D. Fla. Dec. 28, 2006) (*citing California Bankers Ass'n v. Shultz*, 416 U.S. 21, 65 (1974) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy.")).

Robbins' privacy objection should be rejected, because it is not a "natural person" under Article I, sec. 23.  *See id.*  Similarly, under *Alterra*, an entity does not have standing to raise the purported privacy rights of its unidentified personnel.  827 So. 2d at 941.  Moreover, even if Robbins did have standing, these objections should still be rejected because state constitutional

privacy objections do not apply in this federal proceeding.  *See EchoStar Satellite v. Viewtech, Inc.*, 2010 WL 2822109, at * (S.D. Fla. July 16, 2010) (holding that the privacy clause under the Florida constitution did not apply under Rule 45 in a federal question case).  Additionally, even if this Court were to conduct a balancing of interests as it did with respect to certain state medical privacy objections (DE 261), "on balance" the information requested should be produced and any purported privacy concerns could be adequately addressed with a confidentiality order.  *See Adelman v. Boy Scouts of Am.*, 2011 WL 3648573, at *13 (S.D. Fla. Aug. 19, 2011) ("[E]ven when a discovery request seeks comparatively personal and private information for non-litigant third parties, the discovery is still often allowed, notwithstanding the right to privacy in Section 23 of the Florida Constitution, if safeguards are implemented.").  For these reasons, Robbins' baseless privacy objections should be rejected.

### B. Robbins' Purported Responses To The Subpoena Are Without Merit.

#### 1. Robbins' Claim That No Documents Exist Evidencing Izydore's Employment As A Paralegal Is Not Credible (Request No. 1).

Despite Robbins and Izydore both previously representing to other Courts that Izydore was Robbins' paralegal (and therefore shielded from discovery based on privilege), Robbins now shockingly claims that no documents exist relating to Izydore's employment as a paralegal. Specifically, Subpoena Request No. 1 requested:

> All documents relating to the employment of Mark Izydore as a paralegal or for any other purpose, including but not limited to any employment contracts or agreements, employment application materials and/or forms, training materials, business cards, resumes, curriculum vitae, performance reviews, and/or certifications.

*See* Ex. A, Documents Request, ¶ 1.  Robbins did not raise any specific objections in response to this request, and instead represented that "**None exist**."  *See* Ex. B, Responses, ¶ 1.

This response defies logic.  Robbins presented a sworn affidavit signed by Izydore in a prior litigation in which Izydore expressly stated, among other things, as follows:

> I am not a doctor and not employed by Plaintiff [Jeffrey L. Kugler, M.D., P.A.].  I am a paralegal working for Steven L. Robbins, Esq., an attorney representing the Plaintiff … Steven L. Robbins, Esq., for whom I work as a paralegal, is counsel for, among others, Jeffrey L. Kugler, M.D., P.A.  As a paralegal for Mr. Robbins, I cannot be compelled to give testimony of any kind related to clients of Mr. Robbins, as that would violate attorney-client privilege … At no time during the time that Dr. Naidoo was an employee of Jeffrey K. Kugler, M.D., P.A., from January 1, 2008 to December 4, 2009, was I an employee or agent of Jeffrey K. Kugler, M.D., P.A. … I, therefore, object to discovery being sought from me as being wholly improper and harassing, unduly burdensome, sought in bad faith purely to abuse the discovery process and invade my right of privacy, and being of no legitimate purpose whatsoever.

(DE 19-4).   Robbins and Izydore cannot have it both ways--claiming Izydore is Robbins' paralegal to invoke purported privileges and avoid discovery while also claiming no documents exist evidencing Izydore's purported employment as Robbins' paralegal.  Unless the affidavit Robbins submitted on Izydore's behalf was false, documents must have existed evidencing Izydore's employment as a paralegal.  As evidenced by the E-mail String attached as Exhibit "C", it is clear that Robbins and Izydore communicated by email about this scheme at least as far back as February 18, 2004.[2]  It is inconceivable that Izydore worked for Robbins as a paralegal, yet there are no documents evidencing his employment.

Several documents prove that Izydore was heavily involved in the Defendants operations, both before and during the "January 1, 2008 to December 4, 2009" timeframe referenced in his affidavit.  For example, attached is a letter agreement between Kugler and the Adelman and Adelman, P.A. personal injury firm dated April 21, 2008.  (*See*

---

[2] As set forth more fully in the Motion to Compel Interrogatory Answers from Izydore (DE 257) which was served by attorney Robbins in this case, Izydore failed to disclose the existence of his "markizy@msn.com" email address in his sworn answers to State Farm's First Set of Interrogatories in this case, even though those interrogatories specifically requested disclosure of all email accounts Izydore used since 2004.

{22837948;8}

4/21/08 Letter, attached as Ex. "H").   That letter agreement, which was directed to "Mr. Isador,"

confirmed the agreement Izydore reached with that firm to accept a reduced sum to satisfy

Kugler's medical bills in connection with a personal injury claim.  (*See id.*).   Izydore entered

into similar letter agreements on behalf of Bistline (*see* 11/28/07 Letter, attached as Ex. "I"), and

certain of those letter agreements which were directed to Izydore included a signature block

which stated:   "Mark Izydore for Dr. Jeffrey Kugler, Jane Bistline, M.D.[,] Jane Bisltine

M.D./Anesthesia, Palm Beach Surgery Center and Discocare."  (*See* 10/15/07 Letter, attached as

Ex. "J").  In fact, some of those letter agreements actually identify Izydore as "**CEO National**

**Orthopedic Group**."  (*See* 8/22/07 Letter, attached as Ex. "K").

    Not only was Izydore responsible for negotiating professional charges and entering into

agreements on behalf of the other Defendants, but he was also involved in determining which

patients would receive discograms and PDs and which would not.  For example, attached is a

"basic information" summary a personal injury law firm faxed to Izydore "**in order to proceed**

**with the percutaneous lumbar Disektomy [sic]**."  (*See* 4/15/04 Fax, attached as Ex. "L").  That

summary indicates not only the patient's name, but also whether liability is clear, the name of the

carrier, and the policy limits available to the Defendants.    Yet another example is an undated

fax cover sheet from Izydore to Michael Stienger (of Steinger and Iscoe) asking the attorneys

"**Do you want disco**," which appears to be a request for direction from the attorneys with respect

to how a patient should be treated.  (*See* Undated Fax, attached as Ex. "M").  In fact, as

illustrated by the exemplar chart captioned "**Mark Please Review**" which lists patient names,

procedure names, and referring attorney contact information, it appears that Izydore reviewed all

or virtually PD patient candidates for the Defendants.  (*See* Undated Patient/Procedure Chart,

attached as Ex. "N").

These documents are all consistent with the sworn statements from certain former employees of the Defendants which are attached to State Farm's Amended Complaint.  (DE 19, ¶ 90).  For example,

    (a)    one former employee who worked for Jeffrey L. Kugler, M.D., P.A. from about July 2007 through July 2009 has stated that she "needed Izydore's approval before she could schedule certain surgeries."  *See* DE 19, Ex. E ¶ 13;

    (b)    another former employee who worked for Jeffrey L. Kugler, M.D., P.A. from 2007 through late 2009, has stated that she was required to maintain approval logs listing potential surgeries for patients referred by personal injury attorneys which had to be reviewed and pre-approved by Izydore or Mark Nathanson (who is attorney Mark Steinger's brother-in-law and is discussed at ¶¶ 96-99 [in the Amended Complaint]).  *See* DE 19, Ex. F ¶¶ 8, 14-15; and

    (c)    Dr. Naidoo who worked for Jeffrey L. Kugler, M.D., P.A., for about two years, ending on December 4, 2009 has stated (among other things):

        (i)    Izydore monitored the number of new patients scheduled at Jeffrey L. Kugler, M.D., P.A. and constantly complained to Dr. Naidoo's staff that they needed to schedule more new patients; and

        (ii)    Izydore told Dr. Naidoo's staff that they would not get new patients if they did not do more spine surgeries, undoubtedly implying that personal attorneys would not refer patients to the practice if they felt it was unlikely that surgeries would be performed on them.  *See* DE 189, Ex. H 5-10, 13.

According to the statements made by Robbins and Izydore in other matters, Izydore's activities were "under the auspices of Steven L. Robbins Esq."  (DE 19-4, ¶ 4).  That renders Robbins' current position that no documents exist evidencing these extensively documented activities highly suspect, to say the least.  Accordingly, Robbins should be ordered to provide an affidavit (a) confirming that it conducted a diligent search for any document categories for which it claims no responsive documents exist as set forth above, (b) explaining the efforts that were

undertaken in connection with that search; (c) confirming that all responsive documents which within Robbins' possession, custody or control have been produced (or that no such documents exist); and (d) stating whether any responsive documents have been lost or destroyed, and if so, exactly how and when such documents were lost or destroyed.

### 2. Documents Evidencing Payments Robbins Made To Izydore Are Clearly Discoverable (Requests Nos. 2-3).

State Farm requested that Robbins produce documents relating to compensation provided by Robbins to Izydore. Specifically, State Farm's Subpoena Request Nos. 2 and 3 seek:

> 2. All documents reflecting money or things of value provided by [Robbins] to Mark Izydore as a result of services he performed for [Robbins].
>
> 3. All documents reflecting any form of compensation, benefits, or things of value provided to Mark Izydore, including but not limited to 1099s and W-2s.

*See* Ex. A, Documents Requested, ¶¶ 2-3. In response, Robbins responded and objected as follows:

> These appear to be duplicative and redundant. After many hours of searching, attached are such copies of checks as [Robbins] has been able to locate, and the 1099's issued to Mark Izydore in the ordinary course of business as and to show compensation for legal assistant services provided to [Robbins] for several years. Objection is made to having to search for any further for what would only amount to redundant and cumulative evidence all the more establishing what has never been a real issue, to wit: that Mark Izydore is and has been for several years, a legal assistant for [Robbins], as further searching would be unduly burdensome and of no material point given the wholly collateral and irrelevant nature of the inquiry.

None of these objections have merit.

In construing the permissible limits of discovery, the United States Supreme Court has stated:

> The key phrase in this definition — "relevant to the subject matter involved in the pending action" — has been construed broadly to encompass ***any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case***. *See Hickman v. Taylor,* 329 U.S. 495, 501, 67

> S.Ct. 385, 388, 91 L.Ed. 451 (1947). Consistently with the notice-pleading system established by the Rules, ***discovery is not limited to issues raised by the pleadings***, for discovery itself is designed to help define and clarify the issues. *Id.,* at 500-501, 67 S.Ct. at 388. ***Nor is discovery limited to the merits of a case***, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

*U.S. v. Real Property,* 444 F. Supp. 2d 1258, 1262 (S.D. Fla. 2006) (citation omitted) (emphasis added). The document sought here clearly satisfy the applicable standard. They are necessary to test the truthfulness of Robbins' and Izydore's repeated contention that Izydore was merely a "paralegal," to determine whether this purported paralegal arrangement was used to funnel fraud scheme profits to Izydore, to establish the Defendants' symbiotic financial relationships, and to evaluate Robbins and Izydore's credibility which will be key issues in this case.

Moreover, as illustrated by Exhibits H-N above, one of Izydore's main roles in this scheme was to negotiate payments on the Defendants' Letters of Protection ("LOPs") with certain personal injury law firms. The LOPs were the mechanism the Defendants used to extract their piece of the profit from the fraudulently obtained personal injury settlements. Based on the affidavits Carroll and Izydore previously submitted in other cases, Izydore was not employed by the Defendants, but by Robbins. If that were true, Izydore's activities in connection with the scheme, including the negotiation of LOPs and the distribution of the fraudulently obtained settlement proceeds, were apparently conducted under the auspices of Robbins. State Farm is clearly entitled to discovery into these relationships, activities, and financial transactions, because they go to the very heart of the fraud scheme alleged in this case.

While Robbins did produce certain limited responsive documents to these requests, Robbins stated that it refused to "search any further" due to certain unspecified and boilerplate relevance and burden objections, which are each deficient for the reasons set forth above. *See Walker v. Am. Radiographics, Inc.*, Case no. 10-60340 (S.D. Fla. Dec. 27, 2010) (overruling the

defendant's objections that state, without providing any detail, that a discovery request is vague, overly broad, unduly burdensome or not relevant); *see also Powell v. The Home Depot,* Case No.: 07-80435-Civ-HURLEY/HOPKINS (DE 236-1, at p. 5) (S.D. Fla. June 5, 2008); *Belaire at Boca, LLC v. Ass'n Ins. Agency, Inc.,* 2007 WL  2177212, at *1 (S.D. Fla. 2007) (stating that "a party must show specifically how the requested discovery is burdensome, overbroad, or oppressive by submitting detailed affidavits or other evidence establishing the undue burden."). Each of State Farm's Subpoena requests are reasonably calculated to lead to the discovery of admissible evidence and, as a result, Robbins' unsupported boilerplate objections should be overruled.  Robbins should be ordered to provide a complete production in response to these requests and further ordered to provide an affidavit to confirm its production is complete.

### 3.    Robbins' Remaining Responses Are Also Deficient (Requests Nos. 4-6).

Subpoena Request Nos. 4-6 also seek documents relating to other false or misleading affidavits and courts filings Robbins may have relating to the relationships between and among the Defendants.  Specifically, these requests seek:

> 4.    All motions seeking a protective order of any kind that [Robbins] served or filed on behalf of any of the Defendants, including, but not limited to, Mark Izydore, in any legal proceeding.
>
> 5.    All court orders that relate to any of the motions referenced in the immediately preceding document request.
>
> 6.    All affidavits [Robbins] served or filed on behalf of any of the Defendants, including but not limited to, Mark Izydore, in any legal proceeding.

*See* Ex. A, Documents Requested, ¶¶ 4-6.  In response, Robbins responded and objected as follows:

> These requests cumulatively seek hundreds if not thousands of pages of documents filed in courts throughout the State of Florida covering many years, which are not kept in any manner unique to them as separate from other legal documents that are inherently the business of [Robbins] to prepare and file.

> Therefore, it would be unduly burdensome and impossible for all practical purposes, for this sole practitioner practice to cease operations and search all files for what can be readily obtained by State Farm from the public record court files. Since State Farm is a multi-billion dollar conglomerate, it can easily afford to simply pull the documents from the court files, whereas [Robbins] simply cannot possibly afford the time or expense to do so.  Without waiving the foregoing, copies of two Orders readily available to [Robbins] sustaining objections on behalf of some of the Defendants (*Suarez-Matta* and *Gamble* cases), are attached.

All of Robbins' boilerplate objections should be rejected.  *Fin. Bus. Equip. Sol., Inc. v. Quality Data Sys.*, 2008 WL 4663277, at *5 (S.D. Fla. 2008) (overruling non-specific boilerplate objections) (emphasis added).  As demonstrated by the Izydore affidavits quoted above, these requests seek highly probative evidence regarding the affirmative acts that the Defendants, and Robbins, have taken to conceal their fraud scheme by attempting to thwart discovery in other proceedings by making false representations regarding Izydore's relationships with Robbins and the Defendants.  These requests also seek documents which are reasonably likely to lead to the discovery of important impeachment evidence regarding the credibility of both Izydore and Robbins.  *See Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, 2007 WL 1526649, *2 (S.D. Fla. May 22, 2007) ("Impeachment evidence is a classic example of the type of evidence that should be discoverable in litigation.").  Thus, despite Robbins' unsubstantiated objections, these documents are relevant and discoverable, and it should be ordered to produce them in this case.  Moreover, as State Farm has no way of knowing which other cases have involved similarly false and misleading motions for protective orders and affidavits by one or more of the Defendants, Robbins is, from a practical perspective, the only source available to State Farm to obtain this information.  Robbins should be ordered to produce such documents accordingly.

C.    **Robbins Should Be Required To Produce Un-redacted Documents**

As stated above, Robbins did produce 39 pages of documents including 1099s from Robbins to Izydore for 2007-2010 and a limited number of checks from Robbins to Izydore.

{22837948;8}

(See Exemplar 1099 and Check, attached as Exhibits "O" and "P").   The problem with those documents is that the amounts Robbins paid to Izydore were redacted, so they shed no meaningful light whether the compensation exchanged between Robbins and Izydore was consistent with a paralegal position or, for example, used as a method of funneling fraud scheme profits to these players.   This is a complex fraud scheme, and determining how the profits from the scheme were obtained and distributed are critical to State Farm's prosecution of this case. These documents are essential to determining the manner in which Izydore's piece of the profits were distributed and, therefore, State Farm respectfully requests that this documents be produced without redactions.

## V.   CONCLUSION

For these reasons, State Farm respectfully requests the that this Court grant this Motion to Compel and enter an Order:

(1)    overruling Robbins' objections;

(2)    ordering the Robbins to produce all responsive documents in unredacted form within its possession, custody, or control to State Farm within ten (10) days;

(3)    ordering Robbins to submit an affidavit to State Farm within ten (10) days confirming the following for Subpoena Request No. 1:  (a) describing the efforts Robbins undertook to search for such documents; (b) affirming that Robbins conducted a diligent search of all responsive documents within its possession, custody, or control; (c) confirming that no responsive documents were located during said search; and (d) if responsive documents previously existed which have now been lost or destroyed, explaining in detail the date and circumstances leading to the document loss/destruction; and

(4)    granting State Farm entitlement to recover its attorney's fees and expenses associated with the preparation and prosecution of this Motion (the amount of which can be determined at a later date if the parties cannot reach agreement regarding same).

{22837948;8}

## RULE 7.1 CERTIFICATION

Counsel for State Farm certifies that they conferred with Robbins' counsel, Bruce Green, in a good faith effort to resolve the issues raised in the instant Motion on December 12, 2011, but were unable to obtain resolved the issues set forth herein.  State Farm attempted to further confer with Mr. Green about these matters after that date prior to filing this Motion, but was unable to do so.

Dated:   January 6, 2012

By: */s/ David I. Spector*_____
DAVID I. SPECTOR
Fla. Bar No. 086540
david.spector@akerman.com
SCOTT W. ATHERTON
Fla. Bar No. 0749591
scott.atherton@akerman.com
**AKERMAN SENTERFITT**
222 Lakeview Avenue, Suite 400
West Palm Beach, Florida  33401
Telephone:  (561) 653-5000
Facsimile:   (561) 659-6313

--and--

ROSS O. SILVERMAN
ross.silverman@kattenlaw.com
(*admitted pro hac vice*)
CHARLES CHEJFEC
charles.chejfec@kattenlaw.com
(*admitted pro hac vice*)
JOHN W. REALE
john.reale@kattenlaw.com
(*admitted pro hac vice*)
EMILY J. PRENTICE
emily.prentice@kattenlaw.com
(*admitted pro hac vice*)
KATHY L. KOTOS
kathy.kottos@kattenlaw.com
(*admitted pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**

{22837948;8}

525 West Monroe Street
Chicago, IL 60661-3693
Telephone:  (312) 902-5200
Facsimile:   (312) 902-1061

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served on January 6, 2012 on all counsel or parties of record on the Service List below in the manner specified.

*/s/ David I. Spector*
DAVID I. SPECTOR
Fla. Bar No. 086540

## SERVICE LIST

| | |
|---|---|
| **Robert William Wilkins**<br>Jones, Foster, Johnston & Stubbs, P.A.<br>505 South Flagler Drive<br>Suite 1100<br>West Palm Beach, FL 33401<br>561-650-0400<br>Fax: 561-650-0490<br>Email: rwilkins@jones-foster.com<br><br>**Cristopher Stephen Rapp**<br>Jones Foster Johnston & Stubbs<br>505 S Flagler Drive<br>Suite 1100 PO Box 3475<br>West Palm Beach, FL 33401<br>561-659-3000<br>Fax: 650-0412<br>Email: csrapp@jones-foster.com<br><br>*Attorneys for Jeffrey Kugler, MD and Jeffrey L. Kugler, M.D., P.A.*<br><br>*Service Via CM/ECF* | **Anthony Conrad Vitale**<br>The health Law Office of Anthony C. Vitale, P.A.<br>2333 Brickell Avenue<br>Suite A-1<br>Miami, FL 33129<br>305-358-4500<br>Fax: 305-358-5113<br>Email: avitale@vitalehealthlaw.com<br><br>**Michael Joseph Napoleone**<br>Richman Greer Weil Brumbaugh Mirabito & Christensen<br>250 Australian Avenue, South<br>Suite 1504<br>West Palm Beach, FL 33401-5016<br>561-803-3500<br>Fax: 561-820-1608<br>Email: mnapoleone@richmangreer.com<br><br>*Attorneys or Jane Bistline, MD and Jane E. Bistline, M.D., P.A.*<br><br>*Service via CM/ECF* |

{22837948;8}

| | |
|---|---|
| **Robert N. Nicholson**<br>**Parker D. Eastin**<br>Nicholson Law Group<br>200 S Andrews Avenue<br>Suite 100<br>Fort Lauderdale, FL 33301<br>954-351-7474<br>Fax: 954-351-7475<br>Email: robert@nicholsonlawgroup.com<br>Email: parker@nicholsonlawgroup.com<br><br>*Attorneys for 2047 Palm Beach Lakes*<br>*Partners, LLC and Jonathan Cutler, MD*<br><br>*Service Via CM/ECF* | **Bruce David Green**<br>1313 S Andrews Avenue<br>Fort Lauderdale, FL 33316<br>954-522-8554<br>Fax: 522-8555<br>Email: bgreen@bdgreenpa.com<br><br>**Steven L. Robbins**<br>2047 Palm Beach Lakes Boulevard<br>Suite 250<br>West Palm Beach, FL 33409<br>561-686-0990<br>Fax: 686-0990<br>Email: counsel62@hotmail.com<br><br>*Attorneys for Gary Carroll, Mark Izydore, and*<br>*Palm Beach Practice Management, Inc.*<br><br>*Service via CM/ECF* |
| **William Leon Richey**<br>**Catherine Shannon Christie**<br>2 South Biscayne Boulevard<br>One Biscayne Tower - 34th Floor<br>Miami, FL 33131<br>305-372-8808<br>Fax: 305-372-3669<br>Email: wlr@richeylaw.com<br>Email: csc@richeylaw.com<br><br>*Attorneys for Heldo Gomez, MD, Heldo*<br>*Gomez, M.D., P.A., and North Palm*<br>*Neurosurgery, P.L.*<br><br>*Service Via CM/ECF* | **Jose Quinon**<br>Jose M. Quinon, P.A.<br>2333 Brickell Avenue, Suite A-1<br>Miami, FL 33129<br>305-858-5700<br>Fax: 305-358-7848<br>Email: jquinon@quinonlaw.com<br><br>*Attorney for Mark Izydore*<br><br>*Service via CM/ECF* |